MAST ADVERTISING & PUBLISHING, INC., Plaintiff–Appellant,

v.

Hardy MOYERS, Commissioner of Revenue for the State of Tennessee, Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

Nov. 8, 1993.

Charles W. Burson, Atty. Gen. & Reporter, Cynthia M. Odle, Asst. Atty. Gen., Nashville, for appellee.

William H.D. Fones, Jr., John R. Gregory, Michael C. Patton, Nashville, for appellant.

## OPINION

O'BRIEN, Justice.

Taxpayer, Mast Advertising & Publishing, Inc., (Mast) appeals the judgment of the

Chancery Court of Davidson County denying a request for recovery of payment of tax, penalty and interest in the amount of $394,-914.52 based on an assessment of sales tax by the Department of Revenue for the period between 1 January 1977 through 28 February 1986. Mast also appeals the judgment of the Chancery Court validating an assessment of sales tax in the amount $94,622.00 for the period 1 March 1986 through 29 February 1988.

The primary issue for determination is whether Mast Advertising engaged in the taxable activity of selling tangible personal property in the State of Tennessee during the periods covered by the assessments. *See* T.C.A. §§ 67–6–201(1), 67–6–202.

Mast is a Delaware corporation with its principal place of business in Overland Park, Kansas. The firm's primary business is in procuring advertising for, and the publishing of, telephone directories. Mast's customers in Tennessee are all relatively small, rural telephone companies, with whom Mast individually contracts for "the exclusive right to compile, print, and sell advertising in all of the directories of the Telephone Company, including directories for exchanges which may be acquired in the future by Telephone Company under the covenants, terms and conditions herein specified."

The individual contracts between Mast and the telephone companies provide that the two parties share both the advertising revenue from the "yellow" pages and the expenses incurred in publishing and distributing the directories. Generally, Mast pays for most of the publication, mailing and distribution expenses. However, the greater the portion of such expenses paid by the contracting telephone company, the greater the telephone company's share of the yellow pages advertising revenue.

Mast procures advertising for the directories through local and national solicitation. Mast's telemarketing representatives solicit the advertising by telephone. In the contracts with the Tennessee telephone companies, the companies bill the local advertisers directly by adding charges to the advertiser's monthly telephone bill. The revenue from foreign and national advertisers is billed and collected by Mast.

Mast, however, is not in the business of actually manufacturing or printing the directories. Rather, the firm contracts with G.T.E. Directories Printing Corporation (GTE), with plants in Des Plaines, Illinois and St. Petersburg, Florida, to do the actual printing and shipping of the directories. After GTE prints the directories they are delivered either by mail or by bulk shipment on freight lines. It is the telephone company that chooses the mode of delivery through instructions to Mast.

In each contract with a telephone company, Mast undertakes to arrange for directories to be distributed in accordance with the telephone company's instructions. It agrees to reimburse the telephone company for "direct loss or expense" caused by any failure on its part to fulfill its duties under the contract. Moreover, each contract provides that Mast is not liable for non-delivery to the telephone company "either caused by Telephone Company or is beyond the control of either (Telephone Company or Mast)." Thus, Mast would not be liable for failure of delivery, or a delivery of defective directories, caused by actions of a common carrier or the postal service or by unavoidable accidents during transit.

GTE prints the name of the telephone company on the front of the cover of each directory, and it prints a copyright mark on the inside of the cover showing that the directory is the property of the particular telephone company. In addition, before each set of directories leaves GTE's plant, GTE makes a copyright filing with the federal government on its own behalf.

No telephone directories, nor any components or supplies for any directories in the process of being printed, are ever carried by Mast as assets on its financial books and records.

Following audits of Mast's activities in Tennessee, the Department of Revenue is-

sued the two sales tax assessments based on the conclusion that Mast had sold telephone directories directly to their customers in Tennessee. The Department of Revenue contends that by the act of furnishing the directories to the telephone companies and their subscribers, Mast is engaged in the retail of tangible personal property.

Mast argues that it acts as an agent to the telephone companies by procuring advertising and in arranging for the printing and distribution of the directories. This argument is supported by direct testimony to that effect and by the evidence noted. In addition the Department of Revenue and Mast, during the course of litigation, entered into written stipulations. The stipulations were signed on behalf of both parties, and they state that "[a]ll stipulated facts shall be conclusive."

Among the facts stipulated by the parties are the following:

30. Neither Mast nor any of its employees ever had physical possession of the directories at issue after the time they entered the State of Tennessee.

31. Mast never had legal title to the directories at issue after the time they entered the State of Tennessee.

▮▮▮ The law is clear that questions of law are not subject to stipulation by the parties to a lawsuit and that a stipulation purporting to state a proposition of law is a nullity. However, the determination of the ownership of property involves the application of certain legal principles to a particular set of facts. A stipulation by litigants regarding the ownership of property can be interpreted as a statement of the underlying facts, and if the factual stipulation is not patently untrue in view of other evidence in the record, it should be given effect by the Court. *Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917); *Berliant v. Comm'r of Internal Revenue,* 729 F.2d 496 (7th Cir.1984), cert. denied 469 U.S. 852, 105 S.Ct. 174, 83 L.Ed.2d 109;

*Estate of Quirk v. C.I.R.,* 928 F.2d 751 (6th Cir.1991). We construe the stipulation by Mast and the Commissioner of Revenue dealing with legal title to the directories as a stipulation of the facts regarding the intentions and understandings of Mast and the telephone companies with which it dealt. We find such a factual stipulation to be in accord with the weight of the other evidence in the record.

*Hearthstone, Inc. v. Hardy Moyers,* 809 S.W.2d 888 (Tenn.1991), sets out what must take place for a sale in the State of Tennessee to constitute a taxable transaction.

For a transaction to be taxable pursuant to Tennessee's sales tax, certain taxable events must occur in Tennessee. Tennessee Code Annotated, 67–6–201(1), provides:

It is declared to be the legislative intent that every person is exercising a taxable privilege who ... engages in the business of selling tangible personal property at retail *in this state.* (emphasis supplied).

Tennessee Code Annotated 67–6–202, provides:

For the exercise of the privilege of engaging in the business of selling tangible personal property at retail *in this state,* a tax is levied at the rate of five and one-half percent (5.5%) of the sales price of each item or article of tangible personal property when sold at retail *in this state;* the tax is to be computed on gross sales for the purpose of remitting the amount of tax due the state and is to include each and every retail sale. (emphasis supplied).

▮▮ Under the terms of T.C.A. § 67–6–102(23)(A) [1], the elements necessary to constitute a taxable sale are (1) *transfer of title or possession, or both* of (2) tangible personal property, for (3) consideration. *Volunteer Val–Pak v. Celauro,* 767 S.W.2d 635, 636 (Tenn.1989). (Emphasis added).

▮▮ Given the applicable law, as stated by this Court in *Volunteer Val–Pak* and *Hearth-*

1. Volunteer Val–Pac erroneously sets out the code section to be T.C.A. § 67–6–102(14)(A).

*stone, supra,* and given the evidence and stipulations described above, Mast did not make a sale of tangible personal property in Tennessee for the purposes of the state sales tax provisions.

The chancellor found that "Mast has title and possession of the directories when they enter the State." This finding by the chancellor directly contradicts the valid factual stipulation agreed to by the Department of Revenue and Mast Advertising, and is not in accord with the other evidence in the record. Legitimate stipulations that are within the range of possibly true facts and valid litigation strategies cannot be ignored or cast aside. *Federal Deposit Insurance Corporation v. St. Paul Fire & Marine Insurance Co.,* 942 F.2d 1032 (6th Cir.1991).

When a party makes a concession or adopts a theory by stipulation and his cause of action is determined on this concession or theory, then that party must abide by his decision even on appeal by certiorari. *Lewis & Sons v. Ill. Cent. R. Co.,* 150 Tenn. 94, 259 S.W. 903 [ (1924) ]; *Stearns v. Williams,* 12 Tenn.App. 427 [ (1930) ].

These stipulations will be rigidly enforced by the courts of this State. *State ex rel. Weldon v. Thomason,* 142 Tenn. 527, 221 S.W. 491 [ (1920) ]; *Tucker v. International Salt Co.,* 209 Tenn. 95, 349 S.W.2d 541 [ (1961) ]; *Bearman v. Camatsos,* 215 Tenn. 231, 385 S.W.2d 91 (1964). *See State Department of Highways v. Urban Estates, Inc.,* 225 Tenn. 193, 465 S.W.2d 357, 360 (Tenn.1964).

We conclude that the transactions between the parties were not sales of tangible personal property, and the two assessments that are the subject of this litigation were improperly levied by the Department of Revenue.

The Department's alternative argument that Mast is subject to use taxes with respect to the telephone directories is without merit. Mast did not "use or consume" the directories in this State for purposes of the applicable statutes. T.C.A. §§ 67–6–201(2); 67–6–203; 67–6–501. *See J.C. Penney Co., Inc. v. Olsen,* 796 S.W.2d 943 (Tenn. 1990).

For the reasons stated herein, the judgment of the Chancellor is reversed. Costs are assessed against the Commissioner of Revenue and the cause is remanded for calculation of attorney's fees and litigation expenses pursuant to T.C.A. § 67–1–1803.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.