# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 23, 2011 Session

## CLINT BLACK ET AL. V. CHARLES SUSSMAN ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 08-2448-II      Carol L. McCoy, Chancellor**

---

**No. M2010-01810-COA-R3-CV - Filed June 9, 2011**

---

Entertainer filed this suit against his former business manager, who is an accountant, and against several business entities for breach of fiduciary duty, accounting malpractice, breach of contract, misrepresentation, and violation of the Tennessee Consumer Protection Act. The trial court granted summary judgment for the business manager and another defendant on the ground that the gravamen of the complaint was accounting malpractice and that all of the claims were barred by the applicable one-year statute of limitations. As to a second group of defendants, the trial court granted summary judgment based upon the absence of an actual partnership and the absence of proof that the entertainer relied on any representations of partnership. We have concluded that the trial court erred in granting summary judgment to the first group of defendants because the complaint states causes of action for breach of a business manager's fiduciary duties as well as causes of action for accounting malpractice, and these two types of causes of action are subject to different statutes of limitations. As to the second group of defendants, we have concluded that summary judgment was not appropriate because material issues of fact remain as to the entertainer's reliance on representations of partnership.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Samuel David Lipshie and Patricia Head Moskal, Nashville, Tennessee, for the appellants, Clint Black, Black Top Entertainment, Inc., Black Top, LLC, and Clint Black, Inc.

C. Bennett Harrison, Jr. and J. Cole Dowsley, Jr., Nashville, Tennessee, for the appellee, Charles Sussman.

John O. Belcher, Curtis Rodney Harrington II, and Jordan S. Keller, Nashville, Tennessee, for the appellees, Sussman & Associates, P.C., GSO Business Management, LLC, and GSO Accountancy Corporation.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Clint Black, a recording artist, musician, and songwriter, hired Charles Sussman in 1992 to be his business manager. Sussman is a partner in Sussman & Associates, P.C., but has also worked through various other entities. There is no dispute that, as Black's business manager, Sussman provided a range of services, including investment advice, tour accounting, royalty services, tax planning and preparation, and some personal financial planning.

In 2003, Black launched a new, independent record label, Equity Records, Inc. ("Equity"); Black initially owned 25% of Equity, and Sussman owned 10%. Equity quickly experienced financial troubles. Black left his unpaid royalties and other monies in Equity in order to enable the company to pay its expenses. He also advanced recording expenses for himself and several other artists. Beginning in late 2004, Black signed personal guaranties for loans taken out by Equity.

Black terminated Sussman's business management services in May 2007 after he learned that Sussman had not informed him of the fact that, for over a year, Equity's most successful recording act, Little Big Town, had not signed its contract with Equity. After several months with an interim business manager, Black hired Mike Vaden as his business manager.

*Lawsuit*

On November 7, 2008, Black filed this lawsuit against Sussman; Sussman & Associates, P.C., individually and doing business as Gudvi, Sussman & Oppenheim; and GSO Business Management, LLC, individually and doing business as Gudvi, Sussman & Oppenheim. The complaint was amended twice. The second amended complaint, filed in November 2009, includes an additional defendant, GSO Accountancy Corporation, individually and doing business as Gudvi, Sussman & Oppenheim, and additional plaintiffs Black Top Entertainment, Inc., Black Top, Inc., Black Top, LLC, and Clint Black, Inc. The complaint includes multiple allegations of wrongdoing, including the following:

In or around August 1, 2003 based upon the advice and assurances of Defendants, Mr. Black invested capital in and signed an exclusive recording agreement with a start-up independent record company, Equity Records, Inc. ("Equity"). Sussman, who had provided Mr. Black conservative investment advice for years, assured Mr. Black that Equity was a sound investment that would work and make money. Defendants never advised Mr. Black of the risks associated with investing in an independent start-up label, nor did they warn Mr. Black of the risks associated with committing to provide exclusive recording services to an independent start-up label (especially one Mr. Black was advised to invest in). At the time Mr. Black signed with Equity, he had two major record labels who were interested in signing him. Instead, Mr. Sussman advised Mr. Black to pursue the Equity Venture, at great damage to Mr. Black and his professional career as a recording artist and entertainer. . . .

At the same time that Sussman was paid (through Sussman & Associates) by Mr. Black to serve as his personal business manager and accountant, Sussman also served as the Chief Financial Officer of Equity Records, Inc. ("Equity"). In rendering advice and services simultaneously to Equity and to Mr. Black, Sussman and Sussman & Associates repeatedly engaged in self-dealing, negligence, and/or gross negligence.

Defendants breached their duties to Mr. Black by advising Mr. Black to leave more than half a million dollars in royalties in Equity. Leaving royalties in a record company is highly unusual . . . . [Mr. Black] was, in effect, providing Equity an interest free, unsecured loan. Mr. Black has lost at a minimum $539,000, plus interest and the time value of his money, as a result of Defendants' advice to leave his royalties in Equity.

Defendants also advised Mr. Black to advance at a minimum $406,000 in expenses to Equity for which he has never been paid back. Due to Equity's poor financial condition almost from its inception, Black also loaned other moneys to Equity, including a $325,000 loan. Mr. Black has lost these and other amounts, plus interest and the time value of his money, as it appears that he will never recover these amounts as Equity is no longer in business.

Moreover, at the time Mr. Black was advised to leave his royalties and expenses in the company, Mr. Black was not aware that Sussman (through Sussman & Associates) was also being paid a salary and/or monthly professional fees by Equity of in excess of $10,000 per month. . . .

-3-

Sussman/Sussman & Associates' failure to disclose adequately the salary and/or professional fees they received from Equity, while advising Mr. Black to leave his royalties in the company, is a breach of the duties owed to Mr. Black and resulted from [an] undisclosed conflict of interest.

Defendants also breached their duties to Mr. Black by advising Mr. Black to sign personal guaranties for in excess of two million dollars owed by Equity. Advising an artist to sign a personal guaranty for an independent record company is bad business advice under the best of circumstances. . . . Mr. Black has been asked to pay Suntrust Bank approximately $180,000 and Signature Bank approximately $400,000. Further, Mr. Black has already been required to pay $750,000 to City National Bank, through Gudmar2, LLC, for Equity indebtedness guaranteed by Mr. Black and remains potentially liable for an additional $750,000 on that same guaranty (again signed as a result of Defendants' advice).

Defendants also made misrepresentations and/or omissions to Mr. Black regarding the terms and conditions of the contract between Equity and Little Big Town, a well-known recording group, formerly the most successful and lucrative act associated with Equity. Specifically, without limitation, while Sussman was aware that Mr. Black had been told that Little Big Town was signed to a long term deal with Equity, Sussman . . . knew that this was not true. . . . Mr. Black did not learn of this material information until a year and a half later in May 2007. Defendants knew or should have known that the true status of Little Big Town's contract would be material to Mr. Black: (a) in renewing and increasing the amount of his personal guarantee for the indebtedness of Equity, (b) in deciding whether to demand immediate payment of royalties and expenses owed by Equity, and (c) otherwise making each and every investment decision relating to Equity from November 2005 through May 2007. . . . Defendants' conduct also breached the fiduciary duties owed independently to Mr. Black to advise him of this material fact.

Defendants further breached their duties by failing to control, or even attempt to control, expenses or otherwise provide sound financial guidance to Mr. Black and his business affairs and operations as they were being paid to do. After Mr. Black obtained competent business management services, in one year his operating expenses decreased $868,653. This reduction in expenses resulted from changes to Mr. Black's bus and truck lease and maintenance, employee health insurance, lodging, processing fees, salaries, taxes, promotions, and stage/light/prod/studio costs. . . . Based on the empirical data,

-4-

Defendants' mismanagement of Mr. Black's businesses cost Mr. Black approximately $1,772,080 in 2006 and 2007 and in excess of $500,000 in 2005, not counting interest or the time value of money.

Defendants also breached their duties by utilizing unnecessarily complicated and numerous corporate structures which obscured the use of Mr. Black's money, making it virtually impossible for a lay person to trace the money or understand the interrelationship of Mr. Black's business entities.

Incorporating all of these allegations, the second amended complaint sets forth five causes of action: (1) breach of fiduciary duty, (2) accounting malpractice, (3) breach of contract–bad faith, (4) reckless, grossly negligent and/or negligent misrepresentation,[1] and (5) violation of the Tennessee Consumer Protection Act. On the fourth count, for misrepresentation, the complaint details further factual allegations regarding the defendants' failure to inform Black about the status of Little Big Town's contract; failure to disclose and counsel him regarding potential conflicts of interest regarding Black's investments and the defendants' self-interest; and failure to provide accurate information to Black regarding the true financial condition of Equity.

Two groups of defendants–the Sussman defendants[2] and the GSO defendants[3]–filed answers to the complaint. The Sussman defendants asserted a counterclaim against Black for breach of contract for outstanding commissions and expenses and for attorney fees and costs under the Tennessee Consumer Protection Act ("TCPA").[4] The GSO defendants filed a crossclaim against the Sussman defendants and a counterclaim against Black for attorney fees and costs under the TCPA.

On August 28, 2009, the Sussman defendants and the GSO defendants filed separate motions for summary judgment. The Sussman defendants argued that the undisputed facts

---

[1]The plaintiffs withdrew a claim for fraudulent and intentional misrepresentation that was included in the original complaint.

[2]The Sussman defendants are Charles Sussman and Sussman & Associates, P.C., individually and doing business as Gudvi, Sussman & Oppenheim.

[3]The GSO defendants are GSO Business Management, LLC, individually and doing business as Gudvi, Sussman & Oppenheim; and GSO Accountancy Corporation, individually and doing business as Gudvi, Sussman & Oppenheim.

[4]The defendants withdrew a counterclaim for tortious interference with existing and prospective business relationships.

established that the gravamen of the complaint was accounting malpractice and that all of the plaintiffs' claims were barred by the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104.[5] Their motion was supported by the deposition of Black and the affidavits of Sussman and Michael Kraski, former CEO of Equity. The plaintiffs argued that the gravamen of the complaint was breach of fiduciary and business management duties and that, even under a one-year statute of limitations, genuine issues of material facts remained as to when Black knew about or should have discovered the defendants' wrongful conduct. In opposing summary judgment, the plaintiffs submitted numerous documents; the affidavits of Black, an accountant expert, Vaden, and Black's lawyer; and portions of the depositions of Sussman, Vaden, and Black.

The GSO defendants sought summary judgment on the ground that they did not have partnership liability for the acts of the Sussman defendants. They relied on affidavits of Sussman and Kraski and Black's deposition. The plaintiffs argued that there were disputed facts as to the GSO defendants' liability and relied on the same filings listed above with respect to the Sussman defendants' motion.

*Trial court decision*

In an order entered on November 23, 2009, the trial court granted the motion for summary judgment of GSO Business Management, LLC, on all claims. The court found, as a matter of law, that the defendants were not actual partners "because the parties kept their clients and business management services separate and did not share profits." Therefore, the court reasoned, GSO Business Management could only be held liable as a purported partner, which requires proof of reliance. The court found that GSO Business Management "successfully negated an essential element of the Plaintiff's claim by offering undisputed evidence that the Plaintiff did not rely upon any representation of partnership." All claims against GSO Business Management were dismissed. Pursuant to an agreed order, all claims against GSO Accountancy Corporation were subsequently dismissed.

In a separate order, entered on November 25, 2009, the trial court granted in part and denied in part the Sussman defendants' motion for summary judgment. The court ruled, in pertinent part, as follows:

All claims arising from the role of the Sussman Defendants in performing accounting services and all claims arising under the TCPA are barred by the

---

[5]Tenn. Code Ann. § 28-3-104(a)(2) provides for a one-year statute of limitations for "[a]ctions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort."

one year statutes of limitations in Tenn. Code Ann. §§ 28-3-104 and 47-18-110. . . . Using [the discovery rule], Mr. Black knew or should have known shortly after he discharged Mr. Sussman in May of 2007. This action was not filed under November 2008. Therefore, the claims alleging accounting malpractice are barred by the Statute of Limitations and dismissed with prejudice.

The court then listed the claims it identified as accounting services, to which the one-year statute of limitations would apply:

- Claims relating to the pro formas in connection with the formation of Equity records

- Claims relating to the Sussman defendants' breach of duties in providing financial profit and loss statements to Black

- Claims relating to the Sussman defendants' failure to warn Black of the financial risks associated with the formation of Equity

- Claims regarding confusing financial documents prepared by Sussman

- Claims regarding negligent advice by Sussman in connection with Black's touring operation, particularly his alleged failure to control expenses.

As to the last item, the court stated that it was for the jury to determine whether the advice regarding the touring operation was accounting rather than managerial. The court granted summary judgment "to the extent these are accounting functions of a CPA/accountant rather than a business manager."

The court went on to address other claims included in the complaint. The court held that a claim regarding Sussman's failure to properly advise Black on an offer from Sony records in 2002 was barred by the statute of limitations. The court dismissed allegations regarding misrepresentations concerning the status of Little Big Town because it found that the "alleged misrepresentations did not cause any damages."[6]

The court went on to state that "[a] number of Black's claims fall within the scope of Sussman's role as Black's business manager" and that there were factual disputes "as to

---

[6]Little Big Town ultimately signed a contract with Equity, but later terminated the contract under a key man provision after Mike Kraski left as CEO.

whether his remaining duties were those of an accountant or a business manager." The court noted that the statute of limitations applicable to a business manager's fiduciary duties was three years under Tenn. Code Ann. § 28-3-105.[7] The court thus denied summary judgment on the remaining claims:

- Allegations that the Sussman defendants charged Equity fees for services without informing Black

- Allegations that Black was damaged as a result of investing money in Equity while Sussman was paying himself fees for services

- Allegations that Sussman breached his fiduciary duties by advising Black in February 2005 to stay in Equity

- Sussman's alleged projections as to Equity's value

- Allegations that Sussman gave negligent advice in connection with the touring operation

With respect to the last two items, the court stated that it was for the jury to determine which functions were in the scope of Sussman's duties as a business manager and which were in the accountant role. The court went on to state that none of its rulings "preclude either party from introducing evidence at trial on the remaining issues as to what services constitute business management services and what services constitute accounting services." The court granted summary judgment to the Sussman defendants on their counterclaim against Black for commissions.

While the parties prepared for trial, the Sussman defendants filed a motion to alter or amend the trial court's order granting partial summary judgment. They took the position that the trial court erred in "parsing" the allegations of the complaint instead of determining a single gravamen, namely accounting malpractice. Under this theory, argued the Sussman defendants, the trial court should have granted them summary judgment on all claims. By order entered on August 4, 2010, the court granted the motion to alter or amend. Stating that the gravamen of the complaint for statute of limitations purposes was a question of law, the court determined that the gravamen of the complaint was for professional negligence, or accounting malpractice, and that all claims were barred by the applicable one-year statute of

---

[7]Tenn. Code Ann. § 28-3-105(1) establishes a three-year statute of limitations for "[a]ctions for injuries to personal or real property."

limitations. Therefore, the court amended its prior order to grant summary judgment in favor of the Sussman defendants on all claims against them.

On appeal, the plaintiffs raise the following issues:

(1) Whether the trial court erred in dismissing all claims as time-barred under the one-year statute of limitations for accounting malpractice.

(2) Whether, even if the one-year statute of limitations applies to all of the plaintiffs' claims, the trial court erred in finding that there were no disputed material facts on the issue of when the plaintiffs knew about or should have discovered the defendants' wrongful conduct.

(3) Whether the trial court erred in finding that there were no disputed material facts and granting summary judgment in favor of the GSO defendants on the issue of whether the defendants could be held liable as partners.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008).

ANALYSIS

I.

The trial court based its decision to alter or amend its order granting partial summary judgment upon the defendants' argument that the gravamen of the complaint is a question

-9-

of law and that the trial court, not the jury, must determine the applicable statute of limitations. While we agree with these statements of the law, we disagree with the defendants' position that a complaint generally has a single gravamen. Rather, Tennessee caselaw recognizes that a complaint may have more than one gravamen and that it may be necessary to flesh out the underlying facts before the court can properly determine the applicable statute of limitations.[8]

A recent decision of our Supreme Court elucidates the law on this issue. In *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), a wrongful death case against a nursing home, the plaintiff asserted claims for ordinary negligence, negligence per se, and violations of the Tennessee Adult Protection Act. *Id.* at 549. The trial court granted partial summary judgment in favor of the defendants on the grounds that the Tennessee Medical Malpractice Act applied to the ordinary negligence claims and precluded claims for negligence per se or violations of the adult protection act. *Id.* at 549-50. This court affirmed for all purposes relevant here. *Id.* at 550. The Supreme Court determined that the plaintiff had alleged violations of the standard of care for routine care (sounding in ordinary negligence) as well as the standard of care for medical care (sounding in medical malpractice). *Id.* at 560. Therefore, the Court reasoned, the trial court "erred by granting the motion for partial summary judgment on the grounds that the gravamen of the complaint sounded in medical malpractice." *Id.* at 565.

In drawing a distinction between medical malpractice claims and ordinary negligence claims, the court discussed previous cases involving a determination of the applicable statute of limitations based upon the gravamen of the complaint. *Id.* at 557. The court stated as follows:

> It is, of course, the responsibility of the courts to ascertain the nature and substance of a claim. The designation given those claims by either the plaintiff or the defendant is not determinative. . . . [A] single complaint may be founded upon both ordinary negligence principles and the medical malpractice statute. The TMMA [Tennessee Medical Malpractice Act] applies only to those alleged acts that bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art or science, training, or expertise. If there are additional acts or omissions alleged that do not bear a substantial relationship to medical treatment, require no specialized skills, or could be assessed by the trier of fact based upon ordinary everyday

---

[8]The defendants argue that the plaintiffs waived this issue by their purported agreement to the one-statute of limitations-per-complaint theory below. However, this is a question of law, which cannot be waived. *See Mast Adver. & Publ'g, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993).

-10-

experiences, then the claims may be made under an ordinary negligence theory.

*Id.*

A 2010 decision of this court, *Bluff Springs Apartments, Ltd. v. Peoples Bank of the South,* No. E2009-01435-COA-R3-CV, 2010 WL 2106210 (Tenn. Ct. App. May 26, 2010), involved the application of these principles to a determination as to the proper statute of limitations. In *Bluff Springs*, the plaintiffs sued for a declaration that the bank had wrongfully converted funds in seven accounts and violated its contracts. *Id.* at *1. The trial court rejected the defendants' argument that the three-year statute of limitations for conversion of personal property barred all of the claims. *Id.* at *6. On appeal, the defendants again asserted that only one statute of limitations could apply to a given complaint. *Id.* at *7. In rejecting this argument, the court reviewed prior cases and concluded that, while language in those cases taken out of context could be interpreted to support the rule espoused by the defendants, these cases did not actually stand for such a holding. *Id.* at *7-8. These previous cases, the Court concluded, did not involve the question before it: "whether, in a complaint that makes more than one viable claim, one claim can survive despite another in the same complaint being barred by a statute of limitations." *Id.* at *9. The Court went on to cite prior cases establishing that more than one statute of limitations can be applied to one complaint. *Id.* at *9-10 (citing *Lewis v. Caputo*, No. E1999-01182-COA-R3-CV, 2000 WL 502833, at *4 (Tenn. Ct. App. Apr. 28, 2000) and *Taylor v. Trans. Aero Corp.*, 924 S.W.2d 109, 113 (Tenn. Ct. App. 1995)). The Court identified two potentially viable claims in the plaintiffs' complaint–a claim sounding in conversion of property and a claim sounding in breach of contract. *Id.* at *10. These two claims were subject to different statutes of limitations, and the Court found no error in the trial court's refusal to dismiss the entire case under the three-year statute of limitations applicable to conversion actions. *Id.*; *see also Mid-South Indus., Inc. v. Martin Mach. & Tool, Inc.*, No. M2007-02175-COA-R3-CV, 2010 WL 1027471, at *8-9 (Tenn. Ct. App. Mar. 19, 2010) (applying different statutes of limitation to different claims in complaint).

In the present case, we reject the defendants' argument that the complaint does not assert more than one viable claim. As the trial court recognized in its original order granting partial summary judgment, some of the allegations sound in accounting malpractice and others involve breach of the fiduciary duties owed by a manager. For those claims involving the provision of accounting services or the use of an accountant's special skills and expertise, the one-year statute of limitations for accounting malpractice applies. For other claims, involving injuries caused by Sussman's alleged failure to comply with the standard of care applicable to a business manager, the three-year statute of limitations for breach of fiduciary duty would govern. Moreover, while the determination of which statute of limitations

applies to a given claim is a question of law, there may be claims that involve accounting and business manager functions. If there are material facts in dispute, the court is not in a position to decide at the summary judgment stage which statute of limitations applies to which claims.

The trial court's final order was based upon an incorrect legal premise–that only one gravamen could be identified for the entire complaint. In discussing (in its order of partial summary judgment) those claims it did not initially classify as falling under accounting malpractice, the trial court recognized that there are factual disputes as to whether the duties Sussman provided were functions of an accountant or of a business manager. This conclusion comports with expert testimony presented by the plaintiffs identifying certain actions as breaches of a business manager's fiduciary duties. In light of the factual disputes concerning the nature of the services provided by Sussman, we must remand for further proceedings as to those claims not identified by the trial court as involving accounting services.

II.

The portion of the original partial summary judgment order classifying certain claims as claims regarding accounting services was not altered or amended in the final order. We therefore proceed to address the propriety of the trial court's ruling that these claims were barred by the one-year statute of limitations.

In its opinion, the court made the following pertinent findings:

All claims arising from the role of the Sussman Defendants in performing accounting services and all claims under the TCPA are barred by the one year statutes of limitations in Tenn. Code Ann. §§ 28-3-104 and 47-18-110. Specifically, the discovery rule applicable to the statute of limitations begins to run when Mr. Black was "aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *See Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). In applying the discovery rule, a plaintiff cannot be permitted to wait until he knows of all of the injurious affects [sic] or consequences of the alleged wrong. *See John Kohl & Company, PC v. Dearborn & Ewing*, 977 S.W.2d 528, 533 (Tenn. 1998). Using these standards, Mr. Black knew or should have known shortly after he discharged Mr. Sussman in May of 2007. This action was not filed until November 2008. Therefore, the claims alleging accounting malpractice are barred by the Statute of Limitations and dismissed with prejudice.

Thus, the trial court held that all of the claims related to accounting services were barred by the one-year statute of limitations.

As the trial court reasoned, the discovery rule determines when the statute of limitations begins to run: when the plaintiff knew or should have known that he had suffered an injury as a result of the defendant's wrongful conduct. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Thus, even without actual notice, a plaintiff is "deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). The determination of whether a reasonable person would have known that he or she had been injured by a wrongful act is generally a question of fact. *Sherrill v. Souder*, 325 S.W.3d 584, 597 (Tenn. 2010); *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004). We have previously held that, "where the resolution of the issue depends upon the question of whether due diligence was exercised under the circumstances, and where differing inferences might reasonably be drawn from the uncontroverted facts, the issue is not appropriate for summary judgment." *Hathaway v. Middle Tenn. Anesthesiology, P.C.*, 724 S.W.2d 355, 360 (Tenn. Ct. App. 1986).

In this case, the trial court (in its original partial summary judgment order) identified four categories of accounting malpractice claims to which the one-year statute of limitations would apply:

(1) claims regarding Sussman's Equity pro formas—projections regarding the proposed formation of Equity—and his alleged failure to warn Black regarding the financial risks associated with such a venture;

(2) claims regarding Sussman's alleged breach of duties regarding the provision of financial profit and loss statements to Black;

(3) claims that the financial documents provided by Sussman to Black were confusing and did not apprise him of the true financial status of the company;

(4) claims that Sussman gave Black negligent advice regarding his touring operation, particularly as to controlling expenses.

While we agree with the trial court that these are accounting services and that the one-year statute of limitations applies, we must respectfully disagree with the court's conclusion about when the statute of limitations begins to run.

-13-

On the first group of claims, related to advice on the prospect of forming an independent record label, we disagree with the trial court's conclusion, as a matter of law, that "Mr. Black knew or should have known shortly after he discharged Mr. Sussman in May of 2007" that he had been injured by the defendants' wrongdoing. The defendants argue that Black was put on notice when he signed the loan guarantees, beginning in December 2004 or January 2005. The plaintiffs argue that Sussman assured Black that these personal guarantees were a temporary measure to address cash flow problems and that Equity was worth between $25 and $50 million. It was not until Black retained Vaden and received his report in November 2007, the plaintiffs argue, that Black knew or should have known that he had been injured by the defendants' wrongdoing. *See Roe*, 875 S.W.2d at 658 (medical malpractice case in which court held that statute of limitations began to run when patient learned from qualified professional that sex in therapist-patient relationship was wrong). Viewing the evidence in the light most favorable to the plaintiffs, we find that there are sufficient disputes over the facts, and the inferences to be drawn therefrom, to make summary judgment improper as to the date when the statute of limitations began to run.

With respect to the second and third groups of claims listed above, the statute of limitations would begin to run when Black knew or should have known that the defendants' financial reports did not conform with acceptable accounting practices and had caused injury to him. For reasons similar to those discussed above, we again disagree with the trial court's determination, as a matter of law, that Black should have known he had been injured by the defendants by May 2007, when he fired Sussman. We find that there are issues of material fact to be determined as to when Black should have known he suffered injury and that summary judgment was not appropriate.

As to the fourth category of claims, the trial court expressly found that fact questions remained as to "whether this advice was accounting rather than managerial." Thus, summary judgment was not appropriate as to these claims.

III.

The plaintiffs assert that the GSO defendants are jointly liable for Sussman's wrongdoing as partners in Gudvi Sussman & Oppenheim ("GSO"). The GSO defendants argue that GSO was not an actual partnership and that there is no basis for liability as a purported partnership because there is no evidence that Black relied to his detriment on representations of partnership.

-14-

*Actual partnership*

Under Tenn. Code Ann. § 61-1-101(7), a partnership is defined as "an association of two (2) of more persons to carry on as co-owners of a business or other undertaking for profit formed under § 61-1-202, predecessor law, or comparable law of another jurisdiction." The existence of a partnership depends upon the intent of the parties, with the controlling intention being that which is "ascertainable from the acts of the parties." *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). If parties "place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them–the result is a partnership whether or not the parties understood that it would be so." *Id.*

To support their motion for summary judgment, the GSO defendants had the burden of persuasion to negate the existence of an actual partnership. The GSO defendants assert that GSO was not an actual partnership because there was no sharing of profits. Rather, as stated by Sussman in his deposition testimony, GSO was a limited joint venture arrangement between Sussman and Associates, P.C. and Gudvi Oppenheim Inc. for consolidating payroll and human services, their web site, their letterhead, and their telephones. It is undisputed that Sussman and Associates, P.C. and Gudvi Oppenheim, Inc. kept their clients, their client billing, and their profits separate. It is also undisputed that the GSO joint venture was established "for cost savings and in contemplation of group projects" but "never had any joint projects and therefore never generated any revenue."

In response to the GSO defendants' motion, the plaintiffs point to statements and representations made by Sussman in various contexts that he was a partner in GSO and that GSO specialized in business management of royalties. While such representations may, as discussed below, establish a purported partnership, they do not suffice to create an actual partnership. The plaintiffs point to no evidence that the parties involved in GSO actually engaged in any business management activities or reached the point of combining their assets, labor, or skills to perform such activities. Pursuant to Tenn. Code Ann. § 61-1-305(a), a partnership is liable for injuries caused by the wrongful acts of "a partner acting in the ordinary course of business of the partnership or with authority of the partnership." The undisputed facts establish that the parties involved with GSO combined their efforts for administrative purposes, not for the provision of business management services.

The trial court properly found that there was no actual partnership.

*Purported partnership*

Pursuant to Tenn. Code Ann. § 61-1-308, a person who holds himself out as a partner can be held liable as a partner:

If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one (1) or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, *relying on the representation*, enters into a transaction with the actual or purported partnership. If the representation . . . is made in a public manner, the purported partner is liable to a person who relies upon the purported partnership even if the purported partner is not aware of being held out as a partner to the claimant.

Tenn. Code Ann. § 61-1-308(a) (emphasis added). The GSO defendants have conceded that they were purported partners with Sussman & Associates, P.C. The issue is whether Black relied upon the representations of partnership.

As the parties moving for summary judgment, the GSO defendants must affirmatively negate the element of reliance or show that the plaintiffs cannot prove reliance at trial. *Hannan*, 270 S.W.3d at 8-9. The GSO defendants argue that "[t]here has been no assertion of actual reliance upon Mr. Sussman's purported new partnership" and "[t]here is no evidence that Mr. Black continued to engage Mr. Sussman and Sussman & Associates, P.C., in reliance upon this information." Rather, they assert, Black followed Mr. Sussman and did not rely upon the existence of a partnership.

The GSO defendants rely upon the absence of evidence of reliance and assert that Black cannot prove this element. As our Supreme Court has made clear, "It is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. Rather, it is incumbent upon them to affirmatively negate the element or affirmatively show that the element cannot be proven. *Id.* at 8-9. We are not convinced that the GSO defendants successfully shifted the burden of production to the plaintiffs on the issue of reliance.

Moreover, even if we assume the burden of production shifted, we find that the plaintiffs have put forth evidence sufficient to create a genuine issue of material fact. As set forth in Black's deposition, Sussman informed him that the GSO partnership would broaden the scope of their knowledge and experience in the entertainment business, thereby benefiting Black. Black viewed the partnership as a positive development. In his affidavit, Black testified that he relied on all of Sussman's representations as a business manager because he placed "utmost trust" in Sussman. The plaintiffs further assert that, resolving all reasonable inferences in favor of the plaintiffs, it is reasonable to infer that Black "made personal business and investment decisions, continued his business interests and investments in Equity, signed personal guaranties of Equity's indebtedness, and . . . continued to pay business management fees to the [Sussman] Defendants."

-16-

We conclude that there are genuine issues of material fact with respect to Black's reliance on representations of partnership and that the trial court erred in granting summary judgment to the GSO defendants.

CONCLUSION

The trial court's judgment is reversed and the case remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the defendants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE