IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2018 Session

## IN RE DAKOTA M. ET AL.[1]

**Appeal from the Juvenile Court for Loudon County**
**No. 17-JV-140      Henry E. Sledge, Magistrate**

————————————————

## No. E2017-01855-COA-R3-PT

————————————————

Father's rights to his son were terminated based upon his stipulation that the Department of Children's Services could prove that grounds to terminate existed and upon the Court's conclusion that termination was in the child's best interest. Father appeals. Upon our review, we conclude that Father's stipulation that the evidence satisfied the statutory grounds for termination was a nullity. We also conclude that the trial court's order does not contain adequate factual findings with respect to the grounds for termination to provide for a meaningful review. Accordingly, we vacate the judgment of the court and remand the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Ian McCabe, Knoxville, Tennessee, for the appellant, Dusty P.

Herbert H. Slatery, III, Attorney General and Reporter; and Erin A. Shackelford, Assistant Attorney General; for the appellee, Tennessee Department of Children's Services.

Christine L. Dummer, Knoxville, Tennessee, Guardian *ad litem*.

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

## OPINION

In this appeal, Dusty P., the father of Dakota M., appeals the termination of his parental rights. We adapt the Statement of Facts from the brief of the Department of Children's Services for the factual and procedural history of the case:

On March 22, 2016, the Department of Children's Services filed a petition in the juvenile court, requesting the court find Dakota to be dependent and neglected based upon allegations of drug use by Chastity M[.], Dakota's mother ("Mother").[2] The petition named Mother and Dusty [P.], father of Dakota, ("Father") as respondents.[3] Father's location was unknown at the time the petition was filed.

Dakota was placed in the protective custody of the court and an order controlling the parents' conduct was entered on March 22, 2016. Mother was ordered to comply with a non-custodial permanency plan, which included completing a hair follicle or nail bed test, mental health and alcohol and drug assessments, following all recommendations of the assessments, completing random urine screens, and maintaining sobriety. Father was to present himself to DCS and the court for a determination of his fitness to parent.

A preliminary hearing was set for March 28, 2016, but was rescheduled for April 11, 2016. Only Mother appeared for the hearing as the fathers' whereabouts were still unknown. The court found probable cause that Dakota was dependent and neglected as alleged in the petition and that prior orders remained in effect. An adjudicatory hearing was set for April 25, 2016. The adjudicatory hearing was continued to May 2, 2016, so Mother could appear. The whereabouts of Father were still unknown.

… Mother and Father both appeared at the May 2, 2016 hearing. Mother waived the adjudicatory hearing and stipulated that the facts in the petition were true. The court found that Dakota was dependent and neglected, but that there were no allegations of neglect against Father at that time.

* * *

---

[2] (Footnote 3 in original.) Two other children were the subject of this petition; neither child is subject to this appeal.

[3] (Footnote 4 in original.) The petition also named the fathers of the two children mentioned *supra*. They are not parties to this appeal.

DCS then filed a petition in response to the court's bench order again requesting the court to find Dakota dependent and neglected. Mother and Father appeared at the hearing held on July 11, 2016. Mother waived her adjudicatory hearing and stipulated that Dakota was dependent and neglected. Father waived his preliminary hearing.

Father participated in the development of a permanency plan on June 7, 2016. The plan was ratified at a hearing held on July 11, 2016. Father was present at the hearing, was provided with the Criteria & Procedures for Termination of Parental Rights, and was in agreement with the permanency plan. The permanency plan set forth a list of requirements that Father needed to satisfy before Dakota could be placed in his custody. The permanency plan was "shorter than [the Department] typically makes, and required that Father: (1) obtain safe and stable housing, reliable transportation, and legal means of income and provide the Department with proof, (2) participate in regularly scheduled visitation, (3) submit to drug screens and pill counts to monitor his medication, (4) and maintain contact with the Department and notify them of any changes. . . . The juvenile court ratified the plan and found that Father's responsibilities under the plan were reasonably related to remedying the reasons for foster care.

***

Father had notice, but failed to appear for a hearing on November 28, 2016, though he was represented by counsel. At the hearing, the court found Dakota was dependent and neglected as Father did not have appropriate housing, income, or transportation, and he had driven Dakota without a license. A permanency hearing was held on January 9, 2017. The court found Father was not in compliance with the permanency plan as he had completed only very minimal tasks. Father also failed to appear for a permanency hearing held on May 8, 2017. The court found he was not in compliance with the permanency plan as he had not completed any steps and had not seen Dakota or participated in six months.[4]

(Citations to the record omitted.)

DCS filed the petition to terminate parental rights on March 28, 2017. Pertinent to Father, the petition alleged as grounds: abandonment by failure to visit (Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i)); abandonment by failure to support (Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i)); abandonment by an incarcerated parent's failure to visit, failure to support, and by engaging in conduct that exhibited

---

[4] (Footnote 11 in original.) Mother surrendered her parental rights at that hearing.

- 3 -

wanton disregard for the children's welfare (Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv)); substantial noncompliance with the permanency plan (Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2)); and failure to establish/exercise paternity (Tenn. Code Ann. §§ 36-1-113(g)(9) and 36-1-117(c)).

After an initial hearing on May 8, 2017, the court entered an order stating that Mother surrendered her parental rights and that Father requested and was appointed counsel. A guardian *ad litem* was also appointed for each child. The hearing on the petition was held on August 4, 2017; seven witnesses testified, including Father, his wife, and Helen Lyle-Joiner, who testified as an expert in sex abuse counseling and sex abuse treatment.[5] Prior to the introduction of evidence, Father stipulated on the record that DCS could prove the grounds of termination by clear and convincing evidence.

The trial court terminated Father's rights on the grounds of abandonment by incarcerated parent, substantial noncompliance with the permanency plan, and failure to establish/exercise paternity; the court found that termination was in Dakota's best interest. The court also terminated Mother's rights to Dakota and Neveah, as well as the rights of Neveah's biological father, but neither Mother nor Neveah's father has appealed the termination of their parental rights. Father appeals, raising the following issues for our review:

1. Whether the trial court's clear and convincing finding that the Department of Children's Services' petition for termination against father was in the "best interest" of the child pursuant to T.C.A. § 36-1-113(i)?
2. Whether this termination proceeding was ripe given the fact that the child had been disrupted from placement and assigned a more severe level on the continuum of care four days prior to trial?

## II. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of*

---

[5] Ms. Lyle-Joiner had assessed Dakota a few days prior to trial and "learned . . . that he is a highly sexualized young man, that he has issues with impulse control, that he has offended against his little brother, he has attempted to offend against his little three-year-old sister." She testified that in light of Dakota's "paraphilic disorder," which she testified is "a sexual disorder that needs to be treated," he would require specialized treatment; his condition was also why DCS sought to place him "in a Level 3 home with no other children or pets." At the time of the hearing, however, Dakota was still in the preadoptive home "with a very intense safety plan in place," according to Brittany Monroe, the DCS caseworker.

*Children's Serv. v. C.H.K.,* 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. *Santosky*, 455 U.S. at 766–69. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, "as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements" necessary to terminate parental rights. *Id.* In this regard, clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence" and which "produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established." *In re Alysia S.,* 460 S.W.3d 536, 572 (Tenn. Ct. App. 2014) (internal citations omitted).

## III. ANALYSIS

### A. The "Ripeness" of the Petition for Adjudication

As an initial matter, we address Father's argument that, in light of Dakota's recent reassignment, "to terminate his parental rights a mere four days after his child was disrupted from a placement and assigned a new level on the continuum of care was not proper." He argues that the petition was not ripe for adjudication. Ripeness is a justiciability doctrine that requires us to answer the question of "whether the dispute has matured to the point that it warrants a judicial decision." *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010).

The record in this case establishes DCS first became involved with these children in early 2016, and Father was included in the process of trying to reunify with Dakota from June 2016 forward. Dakota's sexual abuse of his sibling was reported in February 2017 and addressed from that time up until the time of trial, as DCS is responsible for the provision of care for children in its custody; this includes ensuring that they are properly supervised and their mental health needs are addressed. The evidence bears out that Father was made aware of Dakota's issues as soon as DCS was notified of them, prior to the petition for termination being filed. Given the period of time DCS was involved in this matter, the facts and circumstances which led to DCS involvement, and the nature of the involvement, we conclude that the consideration of whether grounds for the termination of Father's parental rights existed and whether the termination of his rights was in Dakota's best interest was ripe for adjudication.

## B. Discussion

Father stipulated that DCS could prove the grounds of abandonment by failure to visit, abandonment by failure to support, abandonment by incarcerated parent, substantial noncompliance with the permanency plan, and failure to establish or exercise paternity.[6] In his brief, Father states:

> In the instant matter, father stipulated on the record prior to trial beginning that there were sufficient grounds that existed to terminate his

---

[6] Father and the Court engaged in the following exchange after Father was placed under oath:

> THE COURT: . . .[Counsel for DCS] had noted for the record that his understanding was that you wanted to stipulate that the grounds for termination exists, but you are not stipulating that it's in the best interest of your child for your rights to be terminated, and he made an announcement that you were stipulating that on the grounds of abandonment by failure to visit, abandonment by failure to support, abandonment by incarcerated parent, substantial noncompliance with the permanency plan and failure to establish or exercise paternity. You heard him announce those stipulations. Are all those stipulations true? Do you agree the State can prove evidence that those grounds exist?
> MR. P[.]: On the paternity test, I was ordered to take a paternity test back when I started paying child support on Dakota.
> THE COURT: Mr. P[.], what I'm asking you is, before I came into court this morning, obviously, there was some discussions between your attorney and the attorney for the State, and the attorney for the State seems to believe that there was an agreement that you agreed that the State had proved those grounds for termination. Do you agree with that or do not agree with that?
> MR. P[.]: I agree with it.
> THE COURT: Okay. So you do stipulate that the Department can prove those grounds by clear and convincing evidence?
> MR. P[.]: Yes, sir.
> THE COURT: And you wish to stipulate that they can do that?
> MR. P[.]: Yes, sir.

parental rights. See generally Order Terminating Parental Rights and Final Decree of lull Guardianship, Trans. at 29; see also Trans. of Proc. Vol. 1. at 5-8 (Oct. 20. 2017). Therefore, the focus of this analysis for purposes of this appellate argument may properly skip the issue of grounds and move on to the second prong of termination analysis —"best interest" as defined by T.C.A. § 36-1-113(i).

In considering Father's position, we are mindful of the analysis in *In re Brianna T.*, No. E2017-01130-COA-R3-PT, 2017 WL 6550852, (Tenn. Ct. App. Dec. 22, 2017), in which this Court addressed whether a parent may stipulate that a statutory ground exists for termination or that termination is in the children's best interest. We held that a trial court may not rely on such a stipulation because "the party seeking termination of parental rights is not relieved of its statutory burden of proving by clear and convincing evidence both the ground for termination and that termination is in the child's best interest simply because a parent does not oppose the termination." *Id.* at *3. We further explained:

> "[Q]uestions of law are not subject to stipulation by the parties to a lawsuit." *Mast Advert. & Publ'g, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993). And a "trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law." *In re Carrington H.*, 483 S.W.3d at 524. A stipulation that evidence satisfied a statutory ground for termination or that termination of parental rights was in a child's best interest would be a nullity. *See Mast Advert. & Publ'g, Inc.*, 865 S.W.2d at 902 ("[A] stipulation purporting to state a proposition of law is a nullity.").

*Id.* at *4. Moreover, we are obliged to consider whether the evidence clearly and convincingly established that grounds existed to terminate Father's rights. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) *cert. denied sub. nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, 137 S. Ct. 44 (2016) ("[I]n an appeal from an order terminating parental rights[,] the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.").

We are, however, unable to conduct our review due to the lack of specific factual findings in the order. Tennessee Code Annotated section 36-1-113(k) provides:

> The court shall ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child. The court shall enter an order that makes *specific* findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing. If such a case has

not been completed within six (6) months from the date the petition was served, the petitioner or respondent shall have grounds to request that the court of appeals grant an order expediting the case at the trial level.

Tenn. Code Ann. § 36-1-113(k) (emphasis added). In *In re Navada N.*, a case in which the trial court's oral factual findings pertinent to certain grounds for termination did not appear in the written order and were not incorporated into the order by reference, this Court observed:

> Tennessee law is clear that the trial court speaks through its written orders, not the transcript. *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn.2015). Our review is therefore hampered by the omission of specific factual findings in the trial court's written order. We decline to supplement the trial court's sparse written order with its oral rulings. It is not the role of this Court to parse the record in search of clear and convincing evidence to support DCS's case or to make factual findings where the trial court fails to do so. *See also State v. McBee*, No. M2003-01326-COA-R3-PT, 2004 WL 239759 at *6 (Tenn. Ct. App. Feb. 9, 2004) (noting that when a trial court fails to make findings of fact on an issue "we cannot simply review the record de novo and determine for ourselves where the preponderance of the evidence lies"). The role of this Court is an error-correcting court, and our review is limited to the trial court's written findings and conclusions. *Smith v. Gore*, 728 S.W.2d 738, 746–47 (Tenn. 1987). This is especially true in light of Tennessee Code Annotated Section 36-1-113(k)'s requirement that trial courts enter written orders containing specific findings of fact and conclusions of law in termination cases. A trial court's failure to comply with subsection (k) "fatally undermines the validity of a termination order." *In re S.M.,* 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004).

498 S.W.3d 579, 594 (Tenn. Ct. App. 2016).

While the parties put on proof at the hearing relative to the grounds for termination, the court did not discuss the grounds in its oral ruling at the conclusion of trial. The majority of the "findings" relating to the grounds for termination in the order appear to be "copied and pasted" from the petition; they contain little to no elaboration beyond the allegations of the petition.[7] Our review is limited to the trial court's written

---

[7] For example, with respect to the ground of Abandonment by an Incarcerated Parent (Wanton Disregard), the petition alleged:

> A. Respondents Chastity M[.] and Dusty [P.] were in jail part or all of the four months just before this petition was filed. . . .

> D. They engaged in conduct that exhibits a wanton disregard for the children's

findings and conclusions. *In re Navada N.*, 498 S.W.3d at 594. The order terminating Father's rights does not comply with Tennessee Code Annotated section 36-1-113(k) and does not allow us to conclude that the order was the result of the court's "'own considered conclusions.'" *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 315 (Tenn. 2014) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

Accordingly, we vacate the judgment terminating Father's rights and remand the case for entry of an order that complies with section 36-1-113(k). Our holding in this regard pretermits our consideration of Father's contentions regarding the court's best interest determination. Nothing shall prevent the parties from putting on additional proof, should they so desire and the court allows.

_____
RICHARD H. DINKINS, JUDGE

---

welfare by engaging in a broad pattern of criminal conduct and drug abuse and abandonment of the children, such that they are unfit to care for the children.

The order terminating Father's rights contains two factual findings relative this ground:

A. Respondent Dusty [P.] were [sic] in jail part of the four months immediately preceding the filing of the petition to terminate his parental rights.
B. Dusty [P.] engaged in conduct that exhibits a wanton disregard for the child's welfare by engaging in a broad pattern of criminal conduct and drug abuse and abandonment of the children, such that he is unfit to care for the child. His visitation and support has been very inconsistent, he has not complied with his permanency plans and DCS services and resources, and he has not exercised his visitation with the child since October of 2016.

The portions of the order relative to the grounds of substantial noncompliance and those applicable to putative fathers are similarly duplicative of the allegations contained in the petition.