# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 26, 2017 Session

## JENNIFER KATE WATTS v. SCOTTIE LEE WATTS

**Appeal from the Chancery Court for Shelby County**
**No. CH-14-0083     Walter L. Evans, Chancellor**

———————————————————

**No. W2016-01189-COA-R3-CV**

———————————————————

In this divorce case, the parties owned three businesses that comprised a large portion of their marital estate. Prior to trial, they entered into a written agreement providing that they would retain a business valuation expert to analyze two of the three businesses and that they would accept the expert's findings as conclusive evidence of their value at trial. At the outset of trial, Wife requested a continuance to allow the expert more time to complete the valuations. Despite having ordered Wife to sign a document retaining the expert five days earlier, the trial court denied the continuance and ordered the parties to proceed with trial. As a result, Wife did not present any evidence of either business's value at trial. On appeal, we affirm the trial court's award of a divorce to Wife. However, we conclude that the trial court abused its discretion in denying Wife's request for a continuance and that the trial court's findings of fact and conclusions of law are insufficient to enable a meaningful appellate review of its property division. We also conclude that the trial court's rulings with regard to the Ferjo art collection, the two rings gifted to Wife during the marriage, and the children's private school tuition expenses are not supported by the evidence in the record. As such, we affirm the trial court's permanent parenting plan except that we vacate that portion of the plan concerning the children's private school tuition expenses. On remand, the trial court should make findings of fact and conclusions of law as to whether an upward deviation in child support is appropriate in this case in light of the parties' stated willingness to share the children's private school tuition expenses equally. We affirm the trial court's award of the original Ferjo painting to Wife as her separate property. We hold that the Ferjo reproductions should be classified as marital property and the two rings gifted from Husband to Wife during the marriage should be classified as Wife's separate property on remand. We vacate the remainder of the trial court's property division and remand to the trial court for an equitable division of martial property consistent with this opinion. Finally, we vacate the trial court's rulings on spousal support and attorney's fees and direct the trial court to reconsider those issues on remand following its equitable distribution of marital property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Vacated in part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Annie B. Davis and Lisa J. Gill, Memphis, Tennessee, for the appellant, Jennifer Kate Watts.

Nick Rice, Memphis, Tennessee, for the appellee, Scottie Lee Watts.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On January 16, 2014, Jennifer Kate Watts ("Wife") filed a complaint for divorce from Scottie Lee Watts ("Husband") in the Shelby County Chancery Court. The parties had been married for 20 years and had two minor children together–a daughter (born in October 2006) and a son (born in January 2009). Wife worked as a certified public accountant during the marriage; Husband was self-employed and managed the daily operations of three small businesses–Homesmart Services ("Homesmart"), Watts Overstock Outlet, Inc. ("Overstock Outlet"), and Watts Investment and Asset Management LLC ("Watts Investment").[1] Before trial, the parties agreed that Wife was entitled to a divorce based on Husband's adultery and that Wife should be designated primary residential parent of the children. As such, their disputes centered on the details of the residential parenting schedule, the division of marital property, child support, and spousal support. Trial was scheduled to begin on October 19, 2015.

On May 8, 2015, the parties filed a stipulation agreement with the trial court concerning Homesmart and Overstock Outlet. The stipulation agreement provided that the parties would retain Mark Orndorff of Southard Financial, LLC to perform valuations of those two companies and would stipulate to the values he placed on them without objection. It provided that the parties would cooperate fully with Mr. Orndorff and pay him using funds from their home equity line of credit. Notably, it also provided that Mr. Orndorff would be "allowed to retain the services of other experts if he finds it necessary to do so."

---

[1] Homesmart is a contracting company that provides renovation and repair services to residential and commercial properties. Overstock Outlet is a retail business that buys and sells salvaged merchandise online and at a store in Memphis. Watts Investment is a holding company through which the parties owned and managed rental properties.

Before he would begin, Mr. Orndorff required the signatures of both parties on an engagement letter outlining the terms of their agreement with him. Mr. Orndorff sent an initial engagement letter to the parties on May 22, 2015. In pertinent part, Mr. Orndorff's initial engagement letter stated, "[I]f it becomes necessary to engage other professionals (such as a forensic accountant), Southard Financial will engage qualified professionals of our choice to provide such services." Wife signed the initial engagement letter, but Husband did not. On July 1, 2015, Husband's attorney sent a letter to Mr. Orndorff advising him to modify the above-quoted language in his engagement letter to state, "If the parties agree that it is necessary to hire a forensic accountant, then upon said agreement, Southard Financial shall select and retain said forensic accountant." On July 23, 2015, Mr. Orndorff sent a revised engagement letter to the parties that adopted verbatim the language proposed by Husband's attorney. Husband signed the revised engagement letter, but Wife did not.

On August 28, 2015, Wife filed a motion urging the trial court to enforce the stipulation agreement as written by ordering that Mr. Orndorff be allowed to retain a forensic accountant. Wife claimed that a forensic accountant was needed to ascertain the actual values of Homesmart and Overstock Outlet because the financial records of the companies were not accurate. She claimed that Husband was trying to prevent Mr. Orndorff from retaining a forensic accountant in contravention of the parties' stipulation. In response, Husband argued that Wife was preventing Mr. Orndorff from beginning the work and determining whether a forensic accountant would be necessary by refusing to sign the revised engagement letter.

The trial court conducted a hearing on Wife's motion on September 4, 2015. The trial court indicated during the hearing that it would order Wife to sign Mr. Orndorff's revised engagement letter. Nevertheless, it did not enter a written order directing her to do so until October 14, 2015. The order stated that if Mr. Orndorff believed a forensic accountant to be necessary after beginning the work and the parties could not agree on whether he should be allowed to retain one, then the trial court would make a final determination on the issue on the motion of either party. Wife signed the revised engagement letter on October 14, 2015, but Mr. Orndorff did not complete valuations of Homesmart and Overstock Outlet before trial began five days later.

At the outset of the trial proceedings on October 19, 2015, Wife's attorney requested a continuance to allow Mr. Orndorff more time to complete his valuations of Homesmart and Overstock Outlet. Husband's attorney opposed the request, arguing that Wife's delay in signing Mr. Orndorff's revised engagement letter was the only reason the valuations had not already been completed. Despite having entered an order directing Wife to sign the revised engagement letter just five days earlier, the trial court denied Wife's request for a continuance and ordered the parties to proceed with trial.

In accordance with Local Rule 14(d) of the Shelby County Chancery Court, the parties submitted affidavits listing all of their assets and debts at trial. The Rule 14(d) affidavits submitted by the parties reflected that the net value of their marital estate was between $1,676,924 (according to Wife) and $2,136,926 (according to Husband). While the parties valued several assets differently, the primary reason for the difference in their total valuations was that Husband's Rule 14(d) affidavit included values of $30,721 for Homesmart and $155,114 for Overstock Outlet while Wife's Rule 14(d) affidavit did not list a value for either company. Husband testified that he calculated the values listed in his Rule 14(d) affidavit for those two companies based on the assets and liabilities listed in their respective balance sheets. Wife testified that she did not believe the balance sheets accurately reflected the values of the companies because Husband had routinely used company accounts and credit cards to pay personal expenses during the marriage. Husband acknowledged using company funds for some personal expenses but insisted that he properly reported those expenses as personal income.

On December 15, 2015, the trial court entered a permanent parenting plan and final decree of divorce. The trial court granted a divorce to Wife based on Husband's adultery and designated Wife the primary residential parent of the children with Husband having parenting time 145 days per year. It also divided the assets and debts of the parties. In doing so, however, it did not classify or assign specific values to each piece of property. Instead, it stated that it "used as a basis for allocating the property division the chart that was attached to Wife's Local Rule 14(d) Affidavit." The trial court awarded Homesmart and Overstock Outlet to Husband and awarded Watts Investment to Wife. The trial court declined to make awards of spousal support or attorney's fees to either party.

On January 15, 2016–31 days after the trial court entered its permanent parenting plan and final decree of divorce–Wife filed a motion to set aside the orders pursuant to Tennessee Rule of Civil Procedure 60.02. Wife asserted in the motion that the trial court had adopted Husband's proposed orders without her knowledge or consent at a time when Husband's attorney knew that Wife would be unable to review them or appear in court. Following a hearing, the trial court directed Wife to submit a written list of the changes that she felt should be made to its December 15, 2015 orders.

While Wife's first Rule 60.02 motion was pending, however, on April 21, 2016, Wife filed a second Rule 60.02 motion to set aside the trial court's orders. In the motion, Wife claimed that Husband had transferred $42,600 from a joint investment account into his personal checking account just prior to trial without Wife's knowledge or consent. She asserted that Husband had prevented her from viewing activity in the investment account prior to trial and had wrongfully attributed its decreased value to a decline in the stock market. She argued that the transfer of funds affected the trial court's property division and urged the trial court to re-evaluate its property division in light of Husband's conduct. In his response, Husband admitted transferring the funds prior to trial but

- 4 -

argued that the transfer did not affect the trial court's property division because he only used the funds to pay marital expenses. He also argued that the trial court should not revisit the matter because Wife knew about the decreased balance before trial and failed to exercise ordinary diligence in investigating it.

On May 4, 2016, the trial court entered an amended permanent parenting plan and an amended final decree of divorce. The amended orders included slight changes and additional details but did not alter the trial court's original orders in a meaningful way. The amended orders did not address Wife's claims related to Husband's transfer of funds from the joint investment account. Wife filed a timely notice of appeal from the trial court's amended orders, but this Court determined that the amended orders were not final because they did not address Wife's second Rule 60.02 motion. Following a limited hearing, the trial court entered an order on October 10, 2016 directing Husband to pay an additional $21,300 to Wife for her one-half share of the transferred funds. This appeal followed.

## ISSUES

Wife raises the following issues on appeal, as we have restated them from her appellate brief:

1. Whether the trial court erred in declining to enforce the parties' stipulation agreement.

2. Whether the trial court erred in failing to assign values to Homesmart and Overstock Outlet prior to making a property division.

3. Whether the trial court failed to make sufficient findings of fact and conclusions of law with regard to the Ferjo art collection and the two rings gifted to Wife by Husband during marriage.

4. Whether the trial court failed to make sufficient findings of fact and conclusions of law with regard to Husband's parenting time and the children's private school tuition expenses.[2]

Husband raises the following additional issues, restated:

_____

[2] In her brief, Wife also submits that the trial court failed to make sufficient findings of fact or conclusions of law with regard to Husband's dissipation of marital assets. The substance of her argument on that issue is not clear from her appellate brief or the record and was not addressed at oral argument. We therefore decline to discuss it in our analysis.

- 5 -

1. Whether the trial court erred in ordering Husband to reimburse Wife for her one-half share of the funds that he transferred from the parties' joint investment account prior to trial.

2. Whether the trial court acted within its discretion when it denied Wife's request for a continuance of the trial.

3. Whether Husband is entitled to attorney's fees and expenses on appeal.

## STANDARD OF REVIEW

This case was tried by the trial court without a jury. We therefore review the trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). If the trial court fails to explain the factual basis for a decision, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies, or we may remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly. *Lovelace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). We review the trial court's resolution of questions of law de novo with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

Many of the decisions that a trial judge must make in a divorce case are discretionary. *See, e.g.*, *Armbrister*, 414 S.W.3d at 693 ("[D]etermining the details of parenting plans is peculiarly within the broad discretion of the trial judge."); *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) ("[T]rial courts should be accorded wide discretion in determining matters of spousal support."); *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. 2007) ("Trial courts have broad discretion in fashioning an equitable division of marital property."). On appeal, we review those discretionary decisions using the abuse of discretion standard of review. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard of review envisions a less rigorous review of the trial court's decision and a decreased likelihood of reversal on appeal. *Id.* It reflects our awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Id.* The trial court's decision will therefore be upheld under the abuse of discretion standard "so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Nevertheless, a discretionary decision must still take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 358 (Tenn. 2008). A court abuses its discretion when it causes an injustice to the party challenging the decision by applying an incorrect legal standard, reaching an illogical or unreasonable decision, or basing its decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc.*, 312 S.W.3d at 524. On appeal, we therefore review a trial court's discretionary decision to determine (1) whether the factual basis for the decision

is properly supported by the record, (2) whether the trial court identified and applied the appropriate legal principles applicable to the decision, and (3) whether the trial court's ultimate decision fell within the range of acceptable alternatives. *Id*.

## DISCUSSION

The dissolution of a marriage requires the court to "engage in the orderly disentanglement of the parties' personal and financial affairs." *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998). Because many of the issues that must addressed during that process are interrelated, the court and the parties should pay close attention to the order in which the court addresses and decides various issues in a divorce case. *Id*. Generally, the court's first task is to determine whether one or both parties have demonstrated that they are entitled to a divorce based on one of the grounds listed in Tennessee Code Annotated section 36-4-101. *Id*. After the court determines that one or both of the parties have proven grounds for a divorce, the court should resolve custody and visitation issues if the parties have minor children together. *Id*. Once those status issues have been resolved, the court should turn its attention to the property interests of the parties. *Id*. Finally, the court should consider child support and spousal support issues. *Id*. "Child support decisions should precede decisions about spousal support because a spouse's ability to pay spousal support may be directly and significantly influenced by the amount of child support he or she has been ordered to pay." *Id*. We will address the issues raised by the parties in the order set forth above.

### *Residential Parenting Schedule*

On appeal, Wife contends that the trial court failed to make sufficient findings of fact and conclusions of law with regard to Husband's parenting time. In every divorce case involving a minor child, the trial court's final order must approve and incorporate a permanent parenting plan that allocates parenting responsibilities between the parties and sets forth a residential parenting schedule. Tenn. Code Ann. § 36-6-404(a). To that end, the General Assembly has declared that the "standard by which the court determines and allocates the parties' parental responsibilities" after a divorce is the "best interests of the child." Tenn. Code Ann. § 36-6-401(a). In taking the best interests of the child into account, the court should strive to craft a custody arrangement that allows both parents to "enjoy the maximum participation possible in the life of the child" consistent with other factors and circumstances. Tenn. Code Ann. § 36-6-106(a) (listing 15 factors a court should consider in fashioning a parenting arrangement). Nevertheless, because parenting arrangements require careful consideration of numerous factors, the details of a parenting plan are "particularly within the broad discretion of the trial judge," and it is "not the function of the appellate courts to tweak a residential parenting schedule in hopes of achieving a more reasonable result than the trial court." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2013). We therefore review a trial court's decisions regarding the details of a

parenting schedule under an abuse of discretion standard to determine whether they take the applicable law and relevant facts into account. *Id.*

At trial, the trial judge stated that he considered the relevant statutory factors and directed the parties to draft a parenting plan that allowed Husband approximately 145 days per year of parenting time. The parties drafted a residential schedule in compliance with the trial court's directions, and it was included in the trial court's final order. Although Wife states in her brief that the trial court failed to make sufficient findings of fact and conclusions of law regarding Husband's parenting time, she does not specify how the trial court's decision was erroneous. In any event, we conclude that the record supports the trial court's decision. At trial, both parents submitted proposed parenting plans to the trial court. The residential parenting schedule in Wife's parenting plan provided that the children were to spend 233 days per year with Wife and 132 days with Husband. The residential parenting schedule included in Husband's parenting plan provided that the children would spend 206 days per year with Wife and 159 days with Husband. While it appears as though the trial court merely split the difference between the two when it directed the parties to draft a parenting plan that allowed Husband approximately 145 days of parenting time per year, we find no basis for disturbing its ruling. Nothing in the record raises serious concerns about the parenting ability of either parent. Both parents have strong relationships with the children and love the children dearly. Likewise, both parents have suitable homes; both are able to take the children to school and to their extracurricular activities; and both are able to provide the children with food, clothing, medical care, and other necessities. Moreover, it appears that the trial court's parenting schedule is somewhat similar to the informal schedule that the parties followed while the divorce was pending. Wife testified at trial that Husband had been spending 10 or 11 days per month with the children. Under the trial court's parenting schedule, Husband will spend approximately 12 days per month with the children. In light of the foregoing, we affirm the residential parenting schedule included in the trial court's amended permanent parenting plan.

### *Division of Marital Property*

The parties raise a number of arguments related to the trial court's division of marital property. Dividing a marital estate necessarily begins with the identification of the divorcing parties' property interests. *Owens*, 241 S.W.3d at 485. Tennessee is a dual property state, meaning that our domestic relations statutes make a distinction between "marital property" and "separate property." *See* Tenn. Code Ann. § 36-4-121; *see also Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). As a general rule, assets acquired by either spouse during the marriage are presumed to be marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A). Similarly, assets acquired by either spouse before the marriage are presumed to be separate property. Tenn. Code Ann. § 36-4-121(b)(2)(A). Assets acquired by either spouse by gift, bequest, devise, or descent are also considered separate property. Tenn. Code Ann. § 36-4-121(b)(2)(D). Notably, separate property is

not part of the marital estate and is therefore not subject to division. *Snodgrass*, 295 S.W.3d at 246. As such, it is important that the trial court begin its property division by classifying all the parties' property as marital or separate so that a proper division can be accomplished. *Id*. After the trial court has classified the divorcing parties' property as either marital or separate, it must assign a value to each piece of property subject to division. *Owens*, 241 S.W.3d at 486. Each party bears the burden of presenting competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). If the valuation evidence presented by the parties is conflicting, the court may assign a value that is within the range of values represented by all of the relevant valuation evidence. *Id*. Decisions regarding the classification and value of the parties' property are questions of fact, and they will not be second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Owens*, 241 S.W.3d at 485-86.

Once the trial court has classified and valued the marital property, its goal is to divide the property in an essentially equitable manner without regard to the marital fault of either party. Tenn. Code Ann. § 36-4-121(a)(1). In doing so, the court should consider the factors set forth in Tennessee Code Annotated section 36-4-121(c) to the extent that they are relevant. *Owens*, 241 S.W.3d at 486. Trial courts have wide latitude in fashioning an equitable division of marital property, and appellate courts will ordinarily defer to the trial court's division of the marital estate unless it is inconsistent with those statutory factors or is not supported by a preponderance of the evidence. *Id*.

As it relates to the division of marital property, the primary issue in this case is whether the trial court erred in declining to enforce the parties' stipulation agreement to accept Mr. Orndorff's valuations of Homesmart and Overstock Outlet. The written agreement, titled "Stipulation," was signed by the attorneys for both parties and filed in the Chancery Court clerk's office on May 8, 2015. As we explained above, Mr. Orndorff required both parties to sign an engagement letter setting forth the terms of their agreement with him before he would begin work on the valuations. The parties spent several months wrangling over the language that should be used in the engagement letter before signing it. Ultimately, following a hearing on September 4, 2015, the trial court ordered Wife to sign an engagement letter that Mr. Orndorff had revised at the direction of Husband's attorney and that effectively modified the terms agreed to by the parties in their stipulation of May 8, 2015. The written order directing the Wife to sign the revised letter was not entered by the trial court until October 14, 2015. Following entry of that order, Wife signed the letter on the same date. As a result of the delays, Mr. Orndorff was unable to complete the valuations before the scheduled trial date on October 19, 2015. At the outset of the trial proceedings, Wife requested a continuance to allow Mr. Orndorff additional time to complete the valuations. Husband objected to a continuance of the trial, and the trial court declined to grant Wife's request. The trial court did not elaborate on the factual basis of its decision in its final order. On appeal, Wife argues that the trial court erred in declining to enforce the May 8, 2015 stipulation as agreed to by the parties and in directing that the trial proceed without Mr. Orndorff's valuations.

Tennessee public policy favors allowing divorcing parties to resolve their disputes by agreement. *Long v. McAllister-Long*, 221 S.W.3d 1, 8 (Tenn. Ct. App. 2006). As a result, many divorcing parties resolve disputed issues by entering into a marital dissolution agreement. *Id.* To the extent that the obligations in a marital dissolution agreement retain their contractual character, they are binding on the parties like all other contracts once they are approved by the court. *Id.* at 8-9. Similarly, divorcing parties stipulate to facts that fall within the range of possibly true facts or to valid legal strategies. *See Hyneman v. Hyneman*, 152 S.W.3d 549, 555 (Tenn. Ct. App. 2003). A stipulation is "an agreement between counsel regarding business before the court which is entered into mutually and voluntarily by the parties." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999). While narrower in scope than a marital dissolution agreement, a valid stipulation is binding on the parties and will be "rigidly enforced" by the courts like any other agreement. *See Mast Adver. & Publ'g, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993). In determining whether a stipulation is valid, courts should consider (1) whether the parties had competent representation of counsel, (2) whether extensive and detailed negotiations occurred, (3) whether the parties agreed to the stipulation in open court, and (4) whether the parties acknowledge their understanding the terms and that the terms are fair and equitable when questioned by the judge. *Hyneman*, 152 S.W.3d at 555.

Here, the foregoing factors weigh in favor of the stipulation agreement's enforcement as written. Both parties were represented by counsel when they entered into the agreement. The parties entered into the agreement at mediation. The terms of the agreement are detailed and carefully constructed. The agreement was reduced to writing and signed by the attorneys for both parties. Finally, the agreement was filed with the trial court and appears in the record in the case. While the record on appeal does not reflect that the trial judge posed questions to the litigants about the terms of the agreement, neither party has argued that they did not understand its terms or that its terms are unfair. As such, we conclude that the stipulation agreement was valid and enforceable, and the trial court erred in modifying it.

Of course, given the circumstances, the fact that the stipulation agreement was valid and enforceable does not necessarily mean the trial court erred in declining to enforce it. The agreement was not simply a stipulation to the values of Homesmart and Overstock Outlet. Rather, it was an agreement to a specific method of ascertaining their values. It required the parties to retain and cooperate with Mr. Orndorff so that he could begin the work. It also required Mr. Orndorff's cooperation to complete the work in a timely manner. Clearly, the trial court was not required to delay the trial indefinitely if either of the parties or Mr. Orndorff failed to act diligently in their efforts.

Trial courts have broad discretion over the course and conduct of the proceedings before them. *See Bell v. Todd*, 206 S.W.3d 86, 93 (Tenn. Ct. App. 2005). That discretion extends to decisions to grant or deny a request for a continuance. *Sanjines v. Ortwein &*

*Assocs., P.C.*, 984 S.W.2d 907, 909 (Tenn. 2005). Accordingly, this Court will not reverse a trial court's decision on a motion for a continuance unless the record, reviewed as a whole, shows a clear abuse of discretion or that a prejudicial error has been committed. *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). The decision to grant or deny a request for a continuance is fact specific and must be viewed in the context of all of the circumstances existing when the motion is filed. *Howell v. Ryerkerk*, 372 S.W.3d 576, 580 (Tenn. Ct. App. 2013) (citing *Nagarajan*, 151 S.W.3d at 172). The party seeking the continuance has the burden of demonstrating that the circumstances justify the continuance. *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). To meet that burden, the moving party must supply some "strong excuse" for postponing the trial date. *Howell*, 372 S.W.3d at 580 (citing *Barber & McMurry, Inc. v. Top-Flite Dev. Corp. Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986)). Factors relevant to the trial court's decision include: "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Nagarajan*, 151 S.W.3d at 172 (footnotes omitted).

Application of the foregoing factors here indicates that the trial court should have granted Wife's request for a continuance. First, Wife requested a continuance from the first trial setting in this case, and the record does not reflect that there had previously been any significant delays in the litigation. Thus, it does not appear that postponing the trial while Mr. Orndorff completed the valuations would have been unduly burdensome to the parties or to the court. Second, Wife had a valid reason for requesting the continuance. The stipulation agreement provided a method for conclusively establishing the values of two of the parties' largest marital assets. Moreover, as the trial court was well-aware, the proper values of those particular assets had been vigorously disputed throughout the litigation. Third, despite Husband's assertions to the contrary, the record does not reflect that Mr. Orndorff's failure to complete the valuations prior to trial primarily resulted from a lack of diligence on Wife's part. Mr. Orndorff's initial engagement letter was consistent with the parties' stipulation agreement in that it allowed him to retain other experts if *he* found it necessary to do so. Wife signed that initial engagement letter, but Husband did not. Instead, Husband's attorney directed Mr. Orndorff to send a revised engagement letter that was inconsistent with the stipulation agreement in that it required an additional agreement by the parties before Mr. Orndorff could retain other experts. Although Wife did not sign the revised engagement letter until the trial court entered a written order directing her to do so, she did sign it on the same day that order was entered. By refusing to sign the engagement letters, both parties contributed to the delay in retaining Mr. Orndorff. Wife, however, had a valid reason for refusing to sign the revised engagement letter because its terms were plainly inconsistent with the parties' stipulation agreement. Husband's refusal to sign the initial engagement letter was nothing more than a unilateral attempt to modify the terms of the stipulation agreement. The fact that Husband was successful in that effort does not, in our view, absolve him from shouldering the majority of the blame for the parties' delay in retaining

Mr. Orndorff. Finally, the trial court's denial of Wife's request for a continuance was prejudicial to Wife. The stipulation agreement relieved the parties of their individual burdens to present evidence concerning the values of Homesmart and Overstock Outlet. The trial court expressed an intention to enforce the stipulation agreement, albeit with modified terms, by entering its October 14, 2015 order that directed Wife to sign the revised engagement letter. Nevertheless, the trial court declined to enforce the stipulation agreement just five days later when it denied Wife's request for a continuance. Although Husband presented valuation evidence based on the balance sheets of the companies at trial, Wife did not have the opportunity to prepare evidence in support of her assertion that the balance sheets were not accurate.

Having reviewed the record and applied the appropriate legal principles, we conclude that the trial court's decision was unreasonable and caused an injustice to Wife. There is little factual support for the trial court's decision in the record, and the record does not reflect that the trial court identified and applied the legal principles applicable to the decision. We therefore conclude that the trial court abused its discretion when it denied Wife's request for a continuance.

In any event, our ability to review the trial court's property division is frustrated by its failure to clearly classify the property as marital or separate prior to making a property division. While trial courts have wide latitude in fashioning an equitable division of marital property, this Court cannot determine whether the trial court's division of marital property was equitable if the trial court has not properly identified the marital property. *See, e.g.*, *Myers v. Myers*, No. M2007-01435-COA-R3-CV, 2009 WL 152522, at *3 (Tenn. Ct. App. Jan. 21, 2009); *Melton v. Melton*, No. M2001-00128-COA-R3-CV, 2002 WL 256801, at *3 (Tenn. Ct. App. Feb. 22, 2002). Here, the trial court simply divided all of the assets and debts owned by the parties in a section of its final order titled "Property Division." While dividing all of the property owned by two divorcing parties would be permissible if neither party had any separate property, the evidence presented in this case demonstrates that some of the property at issue was separate. Indeed, the trial court noted that several items of personal property were acquired by gift to one spouse or the other. Nevertheless, it still divided those items as though they were marital property. Pursuant to Tennessee Court of Appeals Rule 7, the appellate briefs submitted by both parties contain tables listing their assets and debts with the classification and value of each as found by the trial court. Inexplicably, the Rule 7 tables of both parties indicate that the trial court classified numerous assets as the separate property of one party or the other. In fact, the parties actually appear to be in agreement concerning what specific assets the trial court classified as separate. However, their interpretations of the trial court's final order have no basis in the record. For example, the parties owned two Tag Heuer watches at the time of the divorce. The trial court's final order states, "The man's Tag Heuer watch, valued at $1,500 is awarded to Husband, and Wife's similar jewelry item is awarded to Wife." Based on that statement alone, the Rule 7 tables of both parties somehow reflect that the trial court classified the women's Tag Heuer watch as Wife's

separate property and the men's Tag Heuer watch as marital property awarded to Husband. We fail to see how such a conclusion can be gleaned from the record.

Further complicating matters, the trial court's final order does not contain findings concerning the values assigned to Homesmart or Overstock Outlet–two of the parties' largest marital assets. Rather than assign values to each specific asset, the trial court stated in the "Property Division" section of its final order that it "used as a basis for allocating the property division the chart that was attached to Wife's Local Rule 14(d) Affidavit." As such, it appears that the trial court intended to adopt the values listed in Wife's Rule 14(d) affidavit for each asset. As we stated previously, however, Wife's Rule 14(d) affidavit did not list any values for Homesmart and Overstock Outlet due to the absence of an appraisal by Mr. Orndorff. Husband urges this Court to review the trial court's property division using the valuation evidence that he presented at trial for the companies because it was the only evidence presented on the issue. Under different circumstances, we might accept such an invitation to soldier on and review the trial court's property division on the record and the proof presented at trial. This Court has previously explained that the trial court's failure to assign values to all items of property "does not prohibit the parties from providing this Court with the value they contend ought to be assigned and a citation to the record to support such an assertion." *Kirby v. Kirby*, No. M2015-01408-COA-R3-CV, 2016 WL 4045035, at *7 (Tenn. Ct. App. July 25, 2016). Such an effort is not appropriate in this case, however, given our determination that the trial court should have enforced the parties' stipulation agreement and allowed Mr. Orndorff to complete valuations of the companies in accordance with the terms of the written and filed stipulation agreement.

In light of the foregoing, we vacate the trial court's property division and remand this case for an equitable division of martial property. On remand, the trial court should enforce the terms of the stipulation agreement as written and allow Mr. Orndorff a reasonable time to ascertain the values of Homesmart and Overstock Outlet as of a date as near as reasonably possible to the final divorce hearing date. The trial court should make findings classifying the parties' property as marital or separate consistent with this opinion. The trial court should also make findings concerning the value of the property to be divided. The trial court should then divide only that property classified as marital in an equitable manner.

### *Remaining Issues*

Wife challenges the sufficiency of the trial court's findings of fact and conclusions of law in several other respects. For example, Wife contends that the trial court failed to explain why it awarded Husband a piece of artwork that was a gift to her during the marriage. At the time of the divorce, the parties owned a collection of artwork by an artist referred to in their filings as "Ferjo." Wife testified that the Ferjo collection consisted of three reproductions of Ferjo paintings that she purchased with marital funds

- 13 -

and one original Ferjo painting that Husband gave her as a Christmas gift. Wife's Rule 14(d) affidavit listed the reproductions as marital property valued at $5,000 and the original painting as Wife's separate property valued at $6,000. Husband did not present any testimony related to the Ferjo collection at trial and listed the entire Ferjo collection as marital property valued at $11,000 in his Rule 14(d) affidavit. In its final order, the trial court found, "The Ferjo artwork collection, purchased by Wife, which was a gift to Husband with a value of approximately $5,000.00 is awarded to Husband." Next, the trial court found, "The other Ferjo original, which was a Christmas gift to Wife from Husband, with an approximate value of $6,000.00, is awarded to Wife, as her separate property." In her brief, Wife contends that the trial court erroneously awarded Husband "one of Wife's Ferjo artwork collection pieces gifted to her during the marriage by Husband." Additionally, Wife's Rule 7 table indicates that the trial court found the "Ferjo original painting" to be Husband's separate property. As such, the basis of Wife's objection is not abundantly clear. To the extent that Wife contends that the trial court erroneously awarded the Ferjo original to Husband, her argument appears to be based on a misreading of the trial court's final order. However, to the extent Wife contends that the trial court erroneously found the Ferjo reproductions to be a gift to Husband, the record supports her argument. Neither party presented evidence that the Ferjo reproductions were a gift to Husband. Wife testified that she purchased the Ferjo reproductions with marital funds, and both parties listed the Ferjo reproductions as marital property in their Rule 14(d) affidavits. As such, we affirm the trial court's award of the original Ferjo painting to Wife as her separate property but conclude that the Ferjo reproductions should be classified as marital property on remand.

Next, Wife contends that the trial court failed to explain why it awarded Husband one of two rings that were gifts to her during the marriage. At trial, Wife testified that both rings were given to her by Husband, but she stopped wearing them and put them into a safe after the parties separated. She explained that, sometime thereafter, Husband took the rings out of the safe and used them to propose to her again. Wife testified that she declined Husband's proposal but never intended to relinquish the rings. Wife claimed that she had asked Husband to return the rings to her multiple times since, but he refused to do so. Wife's Rule 14(d) affidavit listed an anniversary and solitaire ring valued at $8,000 as her separate property but stated that they were in Husband's possession. In his appellate brief, Husband cites his testimony that the rings were made from rings belonging to his mother and grandmother and that Wife told him she did not want them after she learned of his affair as support for the trial court's decision. We note, however, that the cited testimony was presented during a pendente lite hearing before a divorce referee and was not relevant to the issues then before the court. Husband did not address the rings in his testimony at trial. In its final order, the trial court found:

> Husband has two (2) women's rings in his possession, one being an anniversary ring and a solitaire ring received by Wife as a wedding gift. It

- 14 -

is disputed whether or not those rings were returned by Wife to Husband after having been received as a gift. Husband shall select which of those rings he will receive, and the other ring is awarded to Wife.

The evidence presented to the trial court does not support its finding that Wife may have returned the rings to Husband. The only evidence elicited at trial demonstrated that the two rings were a gift from Husband to Wife, that Wife placed the rings in a safe when the parties separated, and that Husband removed the rings from the safe to re-propose to Wife. Although she rejected Husband's overture, Wife never expressed intent to relinquish her property interest in the rings, which were gifted to her as her separate property. As such, the two rings should be classified as Wife's separate property on remand.

Wife also contends that the trial court failed to make sufficient findings with regard to its ruling on the children's private school tuition expenses. The proposed parenting plans submitted by both parties at trial provided that the children would remain in private school as long as they maintained a "C" or better overall average and that the parties would be equally responsible for the cost of the children's private school tuition. Additionally, Husband testified that he would be willing to pay one-half of the children's private school tuition as long as they maintained a "C" average or better. However, the trial court's final order and permanent parenting plan both provide that if the parties do not agree to be responsible for one-half of the children's private school tuition, then the party who insists on the children remaining in private school is to be responsible for paying that expense from whatever resources they may receive. On appeal, Wife contends that the trial court should have ordered Husband to be responsible for one-half of the children's private school tuition and that Husband's income is sufficient to support such an expense. Husband, on the other hand, contends that he cannot afford to make the payments. In our view, the trial court erred in failing to make findings that explain its decision not to enter an order consistent with the parties' professed willingness to share the children's private school tuition expenses. Trial courts may order an upward deviation in child support for educational expenses such as private school tuition. Tenn. Comp. R. & Regs. 1240-02-04-.07 (2)(d)(1)(i). On remand, the trial court should make findings of fact and conclusions of law that address whether such an upward deviation is appropriate in this case.

Finally, Husband advances several arguments related to the trial court's decision to award Wife one-half of the $42,600 that he transferred from the parties' joint investment account into his personal checking account just prior to trial. First, he contends that the doctrine of res judicata should have barred the trial court from considering the matter. Res judicata bars a second action between the same parties or their privies on the same claim with respect to all issues that were, or could have been, litigated in the first lawsuit. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). Here, Wife did not pursue the matter by filing a new lawsuit; she did so by filing a motion

pursuant to Tennessee Rule of Civil Procedure 60.02. That rule permits the court to relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02. Husband's res judicata argument is therefore without merit. Second, Husband contends that the trial court erred in ruling that Wife was entitled to one-half of the funds because he used the money to pay marital expenses and the expenditures therefore were not dissipation. Husband's argument is flawed, however, because Wife did not argue, nor did the trial court rule, that the expenditures equated to dissipation.[3] As such, it was not relevant whether Husband used the funds to pay marital expenses. Wife simply argued that Husband's withdrawal of the funds prior to trial affected the trial court's property division, and the trial court agreed. We find no basis for disturbing the trial court's decision. The trial court may therefore consider Husband's transfer of the funds in making its equitable division of marital property on remand.

### *Attorney's Fees on Appeal*

Both parties seek an award of attorney's fees incurred on appeal.[4] The decision to award attorney's fees incurred on appeal lies solely within the discretion of the appellate court. *Andrews v. Andrews*, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010). We have considered the parties' requests and respectfully decline to award attorney's fees incurred on appeal to either party.

### CONCLUSION

In sum, we affirm the trial court's award of a divorce to Wife. We also affirm the trial court's permanent parenting plan except that we vacate that portion of the permanent parenting plan concerning the children's private school tuition expenses. On remand, the

---

[3] During the trial court's limited hearing on this issue, Husband's attorney acknowledged that Wife was not arguing the expenditures equated to dissipation. At one point, he stated, "Dissipation hasn't even been alleged by opposing counsel, much less did they produce any information in regards to dissipation." Later, he stated, "Now, if they even alleged dissipation, we would have a potential problem. They didn't even try to prove dissipation[.]"

[4] Although not presented as a stand-alone issue, Wife's appellate brief states in closing, "Finally, this Honorable Court should award Appellant her attorney's fees with respect to this appeal."

trial court should make findings of fact and conclusions of law as to whether an upward deviation of child support is appropriate in this case in light of the parties' stated willingness to share the children's private school tuition expenses equally. We affirm the trial court's award of the original Ferjo painting to Wife as her separate property. We vacate the remainder of the trial court's property division, however, and remand this case for an equitable division of martial property consistent with this opinion. On remand, the trial court should enforce the parties' stipulation agreement as written and allow Mr. Orndorff a reasonable time to ascertain the values of Homesmart and Overstock Outlet as of a date as near as reasonably possible to the final divorce hearing date. The trial court should make findings classifying the assets and debts of the parties as marital or separate property consistent with this opinion. The trial court should also make findings concerning the value of the property to be divided. The trial court should then divide only that property classified as marital in an equitable manner. On remand, the Ferjo reproductions should be classified as marital property, and the two rings gifted from Husband to Wife during the marriage should be classified as Wife's separate property. Finally, we vacate the trial court's rulings on spousal support and attorney's fees and direct the trial court to reconsider those issues on remand following its equitable distribution of marital property. The requests of both parties for an award of attorney's fees on appeal are denied. Costs of this appeal are taxed one-half to the appellant, Jennifer Kate Watts, and her surety, and one-half to the appellee, Scottie Lee Watts, for which execution may issue.

 

 

_____

ARNOLD B. GOLDIN, JUDGE