IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 2, 2017

IN RE BRIANNA T. ET AL.

**Appeal from the Juvenile Court for Knox County**
**No. 61004     Timothy E. Irwin, Judge**

_____

**No. E2017-01132-COA-R3-PT**

_____

Mother appeals from the termination of her parental rights to her four children.  Mother, who did not attend the final hearing, stipulated through counsel that a statutory ground existed for termination of her parental rights and that termination was in the children's best interest.  The juvenile court terminated Mother's parental rights based on her stipulation and the proof offered by DCS.  Despite the stipulation, we conclude that there was clear and convincing evidence of a statutory ground for termination but not for the finding that termination was in the children's best interest.  Thus, we reverse the termination of Mother's parental rights and remand for entry of a judgment dismissing the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Anna East Corcoran, Knoxville, Tennessee, for the appellant, Amy E.

Herbert H. Slatery III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

## I.

Ronald T., Sr. ("Father") and Amy E. ("Mother") are the parents of Brianna T., Summer E., Aaliyah T., and AnnaBella T. The children range in age from three to seven years old.

### A. FACTUAL & PROCEDURAL BACKGROUND

Shortly after Aaliyah's birth, the Tennessee Department of Children's Services ("DCS") received a report that Mother exposed the child to illegal and non-prescribed drugs in utero, including methadone, benzodiazepines, oxycodone, and marijuana. As a result, Aaliyah developed symptoms of Neonatal Abstinence Syndrome and required treatment with morphine and phenobarbital. On January 11, 2013, DCS petitioned the Juvenile Court for Knox County, Tennessee, for temporary legal custody of Aaliyah. The juvenile court entered a protective custody order on the same day.

After an adjudicatory hearing on the severe abuse issue,[1] the court entered an order on January 8, 2014, adjudicating Aaliyah to be dependent and neglected and finding that Aaliyah was a severely abused child. Specifically, the court found by clear and convincing evidence

> that the mother was aware of the risks of harm to herself and her unborn child, including the risk of serious bodily injury or death, during this pregnancy based on the mother's use of marijuana during the pregnancy with Brianna, mother's illicit use of substances during the pregnancy with Summer, warnings given to the mother by her OB/GYN, both verbally and in the form of a pamphlet produced by East Tennessee Children's Hospital; and that she received warnings, during the pregnancy with Aaliyah, from her OB/GYN verbally, and again, by reading the pamphlet "Drug Use During Pregnancy." Mother was aware of the dangers of her continued illicit use of drugs during pregnancy and signed an "Informed Consent: Prenatal Drug Exposure" form indicating that she was aware of such dangers, including serious bodily injury or death.

---

[1] At the time of this hearing, Mother did not have custody of Brianna, Summer, and Aaliyah. AnnaBella (date of birth February 2014) was not yet born. Apparently, because of Mother's extensive history with drug abuse, the court required her contact with Brianna and Summer to be supervised. But while Mother was pregnant with Aaliyah, she resided in the home with Father and the children in violation of court order. As a result, Brianna, Summer, and Aaliyah were removed into foster care.

2

Thereafter, Mother entered into several permanency plans. Mother sought treatment for her drug abuse and completed her responsibilities under the plans. As a result, the court allowed Mother unsupervised visits with the children and eventually restored custody of Summer, Aaliyah, and AnnaBella to Mother in late 2014. At around the same time, Father was awarded custody of Brianna and her two half-siblings.

On November 25, 2015, the children's half-sister was visiting with Father when she discovered "concerning marks and bruising on Aaliyah's face" and "extensive bruising" on the rest of Aaliyah's body. After receiving a referral alleging physical abuse, lack of supervision, and medical neglect of the children, DCS began an investigation. The investigation led to the discovery of extensive injuries to Aaliyah and of the parents' failure to seek appropriate medical care and to follow recommendations for the other three children.

On December 3, 2015, DCS petitioned the juvenile court, again seeking a finding of dependency and neglect as to the children and a severe abuse finding as to Aaliyah. The court entered a protective custody order on the same day.

After an adjudicatory hearing, on October 19, 2016, the juvenile court entered an order adjudicating all of the children dependent and neglected and finding that Aaliyah was a severely abused child at the hands of Mother and Father. The court observed that Aaliyah "was covered from head to toe with bruises, scabs, scratches, and other marks" and that "[n]early every place on [her] body was injured." According to the court, the medical records indicated that "the majority of the injuries were inflicted by non-accidental trauma and not by 'rough play.'"

Ultimately, the court found that "[o]ne or the other of these parents caused the injuries to Aaliyah, and the other knowingly failed to protect the child from those injuries or further injuries." The court also found that the parents failed to seek medical care for the other children and failed to follow recommendations of the children's pediatrician.

On December 1, 2016, DCS filed a petition to terminate Mother's parental rights to the four children.[2] The petition alleged three grounds for termination: severe child abuse against Aaliyah, substantial noncompliance with the permanency plans, and persistence of conditions. The petition also alleged that termination of Mother's parental rights was in the best interest of the children.

---

[2] DCS also filed a petition seeking termination of Father's parental rights. Father's parental rights are the subject of a separate appeal. *See In re Brianna T.*, E2017-01130-COA-R3-PT.

3

## B. PROOF AT THE HEARING

On May 9, 2017, the juvenile court held a hearing on the termination petition. Mother did not attend the hearing, but Father's counsel advised the court that Mother authorized her counsel to stipulate to the finding of severe child abuse, that "the Foster Parents are good caregivers, and it's in the best interest of her children to be adopted."[3] In response to this stipulation, counsel for DCS elected not to pursue the grounds of substantial noncompliance with the permanency plans and persistence of conditions.

DCS nevertheless offered into evidence the children's birth certificates, the January 8, 2014, and the October 19, 2016, dependency and neglect orders, and the December 3 protective custody order. DCS also called two witnesses to testify.

A DCS case manager generally testified about the services the children were receiving through school and counseling. According to the case manager and foster mother, the children were doing well and got along with each other. When the girls initially came into foster care, however, they would "run around, hitting, fighting over toys, lots of screaming and crying." Although they still had some behavioral issues, the children have improved and "listen[ed] very well to the foster parents."

As of the date of trial, the children had only lived with the foster family for two and a half months. And the foster family had yet to decide if they wished to adopt the children.

## C. THE JUVENILE COURT'S RULING

The court ruled from the bench, finding the stipulated ground of severe abuse and that "it's in the best interest of these children to stay right where they are." Because the children were "in a place where they are loved and in a place that they love," the court "s[aw] no reason to run down the list of factors in this case because [Mother] at this time wouldn't be an option." The court also found that Mother did not have a suitable home and had not made an adjustment of circumstances. As a result, the court found that "[t]here's no reason to move these children."

On or about May 25, 2017, the juvenile court entered an order terminating Mother's parental rights to the children. The court terminated Mother's parental rights on

---

[3] During the case manager's testimony, Father's counsel announced that she had received a text message from Father. According to Father's counsel, "[Father] is with . . . the mother," "[t]hey are stranded six hours away," and "[t]hey wanted [the court] to know that they planned to be present to stipulate but that [parents' counsel] have their permission to stipulate." Also according to Father's counsel, both parents made the stipulations in the presence of three witnesses the previous week. Perhaps in reliance on these statements, Mother's counsel made the stipulations on her behalf. But Mother's counsel admitted that she "ha[d] not actually spoken to" Mother.

the ground of severe child abuse and acknowledged DCS's withdrawal of the two remaining grounds. The juvenile court also determined that termination of Mother's parental rights was in the children's best interest.

## II.

A parent has a fundamental right, based in both the federal and State constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). But parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250. Our Legislature has identified those situations in which the State's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g) (2017).

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). First, parties seeking termination of parental rights must prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). Second, they must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, the parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *In re Bernard T.*, 319 S.W.3d at 596. "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). Such evidence produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

On appeal, we review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). Additionally, as this Court has explained, "[w]hen the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498

S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). Thus, we give great weight to the credibility accorded to a particular witness by the trial court. *Id.* (citing *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997)).

After reviewing the record, we "must then make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007). We "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016), *cert. denied sub. nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, 137 S. Ct. 44 (2016).

As an initial matter, we agree with Mother that the trial court may not rely on her stipulations that a statutory ground exists for termination of her parental rights or that termination of her parental rights is in the children's best interest.[4] Our supreme court has previously held that, in order to terminate a parent's parental rights, the trial court is statutorily required to make written findings of fact and conclusions of law supported by clear and convincing evidence presented at the hearing regardless of whether the parent consents to or contests the termination. *In re Angela E.*, 303 S.W.3d at 256; *see also C.J.H. v. A.K.G.*, No. M2001-01234-COA-R3-JV, 2002 WL 1827660, at *8 (Tenn. Ct. App. Aug. 9, 2002) ("An [unopposed] action to terminate parental rights . . . is subject to

---

[4] We disagree with Mother's contention that she had to be present in the courtroom for her stipulation to be effective. In support, she cites Rule 11 of the Rules of Criminal Procedure and Tennessee Code Annotated § 36-1-111. But Tennessee Rule of Criminal Procedure 11 has no application here because "[a] termination of parental rights case is a civil, not criminal, proceeding." *In re S.M., Jr.*, No. 01-A-01-9506-JV-00233, 1996 WL 140410, at *3 (Tenn. Ct. App. Mar. 29, 1996); *see* Tenn. R. Crim. P. 1(a) ("These rules govern the procedure in all criminal proceedings conducted in all Tennessee courts of record."). And the procedural requirements of Tennessee Code Annotated § 36-1-111 apply to voluntary surrenders of parental rights or parental consent to adoption, not termination of parental rights cases. *See In re Angela E.*, 303 S.W.3d 240, 247-51 (Tenn. 2010) (distinguishing between a surrender proceeding and a termination proceeding and their respective procedural requirements).

Mother also asserts a claim for ineffective assistance of counsel based on the stipulations. She complains that her appointed attorney made the stipulations on her behalf at trial despite admitting that she had not personally spoken to Mother. Mother also takes issue with counsel's failure to make an opening statement, make a closing argument, and ask questions during trial. Although these are valid concerns, our supreme court has held that an indigent parent's right to appointed counsel in termination of parental rights cases does not include the right to challenge an order terminating parental rights based on ineffective assistance of counsel. *In re Carrington H.*, 483 S.W.3d at 533, 535 (declining "to import criminal law post-conviction type remedies" in termination of parental rights cases because "the burdens of extended litigation fall most heavily upon children").

the same statutory requirements as one that is opposed: proof by clear and convincing evidence that grounds exist and that the child's best interests are served by the termination."). Thus, the party seeking termination of parental rights is not relieved of its statutory burden of proving by clear and convincing evidence both the ground for termination and that termination is in the child's best interest simply because a parent does not oppose the termination.

Further, "questions of law are not subject to stipulation by the parties to a lawsuit." *Mast Advert. & Publ'g, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993). And a "trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law." *In re Carrington H.*, 483 S.W.3d at 524. A stipulation that evidence satisfied a statutory ground for termination or that termination of parental rights was in a child's best interest would be a nullity. *See Mast Advert. & Publ'g, Inc.*, 865 S.W.2d at 902 ("[A] stipulation purporting to state a proposition of law is a nullity.").

Although the juvenile court accepted Mother's stipulations, it also heard proof presented by DCS at the termination hearing. So we must determine whether the proof presented together with any facts to which Mother stipulated constituted clear and convincing evidence of both the ground for termination and that termination was in the best interest of the children.

A. GROUND FOR TERMINATION OF PARENTAL RIGHTS

The court terminated Mother's parental rights as to all of the children solely on the ground of severe abuse. As the statute makes clear, the finding of severe abuse can be based on a prior court order or on evidence of "severe child abuse" submitted to the court hearing the termination case. A parent's rights may be terminated if

> [t]he parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian[.]

Tenn. Code Ann. § 36-1-113(g)(4) (2017). A finding of severe abuse against one child can be the basis for terminating parental rights to a sibling, including a half-sibling. *See In re Envy J.*, No. W2015-01197-COA-R3-PT, 2016 WL 5266668, at *12 (Tenn. Ct. App. Sept. 22, 2016), *perm. app. denied*, (Tenn. Dec. 16, 2016).

Here, the court found severe child abuse based on two prior orders, one adjudicating Aaliyah dependent and neglected and one adjudicating all of the children

dependent and neglected. The prior orders were entered into evidence, so consideration of Mother's stipulation is unnecessary. Still, Mother contends that this termination proceeding is a "new and separate proceeding involving different goals and remedies, different evidentiary standards, and different avenues for appeal." Thus, Mother submits that the juvenile court erred in relying on two prior orders from two separate dependency and neglect proceedings to support its finding of severe child abuse.

We disagree; as noted above, the statute permits reliance on "any prior order of a court" finding that the parent had committed severe child abuse. Tenn. Code Ann. § 36-1-113(g)(4). And we have commented that "[t]he most serious consequence of a finding that a parent has committed severe child abuse [in any court order] is that such a finding, in and of itself, constitutes a ground for termination of parental rights." *In re Samaria S.*, 347 S.W.3d 188, 201 (Tenn. Ct. App. 2011) (quoting *State, Dep't of Children's Servs. v. M.S.*, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *10 (Tenn. Ct. App. Mar. 8, 2005)); *see* Tenn. Code Ann. § 36-1-113(g)(4) (listing as a ground for termination where a parent "has been found to have committed severe child abuse . . . under any prior order of a court," among other things). The prior orders, which were not appealed, found by clear and convincing evidence that Aaliyah was the victim of "severe child abuse" as defined by Tennessee Code Annotated § 37-1-102. As such, additional evidence beyond the submission of certified copies of the orders was unnecessary. The orders themselves constituted clear and convincing evidence of a statutory ground for terminating Mother's parental rights. *See In re Heaven L.F.*, 311 S.W.3d 435, 439-40 (Tenn. Ct. App. 2010) ("[T]he issue of whether [m]other committed severe child abuse is res judicata and the trial court properly found by clear and convincing evidence that Mother's parental rights should be terminated [on this ground].").

## B. BEST INTEREST OF THE CHILDREN

As DCS proved at least one ground for termination of parental rights against Mother, we next consider the issue of whether termination is in the best interest of the children. Because "[n]ot all parental misconduct is irredeemable, . . . Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). Tennessee Code Annotated § 36-1-113(i)[5] lists

---

[5] The statutory factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

nine factors that courts may consider in making a best interest analysis. The focus of this analysis is on what is best for the child, not what is best for the parent. *Id.* at 499. Additionally, the analysis should take into account "the impact on the child of a decision that has the legal effect of reducing the parent to the role of a complete stranger." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006). Although "[f]acts relevant to a child's best interests need only be established by a preponderance of the evidence, . . . the combined weight of the proven facts [must] amount[] to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535.

The juvenile court first found that Mother "ha[d] not made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the children's best interest to be in her home despite reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible." These findings appear to be addressed to both the first and second statutory best interest factors. *See* Tenn. Code Ann. § 36-1-113(i)(1), (2). But based on our review of the record, no proof was presented at the hearing to support the findings.

The court next found that "[a] change in caretakers and physical environment is likely to have a detrimental effect on the children's emotional and psychological

---

        (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

        (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

        (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

        (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

        (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances, or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

        (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

        (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

9

condition." *See id*. § 36-1-113(i)(5). But again DCS failed to offer any proof to support such a finding.

Perhaps in reliance upon Mother's stipulation, at the final hearing, DCS presented scant proof regarding whether termination would be in the children's best interest. Transcribed, the witness testimony was no more than fourteen, double-spaced pages. The only findings supported by the evidence were that Mother "ha[d] committed severe abuse on two separate occasions toward one of her daughters," as shown by the prior orders, and that the children "ha[d] blossomed in their current foster home and [we]re learning to be healthy, caring sisters."[6]

Even taking into consideration Mother's stipulation of fact "that the Foster Parents [were] good caregivers," the evidence presented fell far short of that required. DCS, as the party seeking to terminate Mother's parental rights, had the burden of proof. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Bernard T.*, 319 S.W.3d at 596. That evidentiary burden required DCS to prove that "the combined weight of the proven facts amounts to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535. DCS simply failed to meet that burden.

## III.

Based on the foregoing, we conclude that the ground of severe abuse was proven by clear and convincing evidence. But because we conclude that the juvenile court's best interest determination was not supported by clear and convincing evidence, we reverse the termination of Mother's parental rights. This case is remanded to the juvenile court for entry of a judgment dismissing DCS's petition.

_____
W. NEAL MᴄBRAYER, JUDGE

---

[6] Our supreme court has recently held that "[e]ven if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider *all* of the statutory factors, as well as any other relevant proof any party offers." *In re Gabriella D.*, ___ S.W.3d ____, No. E2016-00139-SC-R11-PT, 2017 WL 4324959, at *15 (Tenn. Sept. 29, 2017) (emphasis added). Here, the juvenile court did not—and could not have— considered all of the statutory best interest factors. DCS did not present enough proof for the court to conduct any meaningful best interest analysis.